**Billy D. WALLACE et al., Appellants,**

v.

**Leon HORN et al., Appellees.**

**No. 803.**

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 28, 1974.

Rehearing Denied March 14, 1974.

Tony Martinez, Biscoe & Martinez, Harlingen, for appellants.

William L. Morrow, Stiernberg, Skaggs & Koppel, Harlingen, for appellees.

## OPINION

NYE, Chief Justice.

This is a suit for personal injuries brought by Billy D. Wallace individually and as next friend for his minor son Jeffrey Dean Wallace to recover damages as a result of a fall on the grounds of appellee's motel in Brownsville, Texas. The trial court granted the appellee's motion for summary judgment on the basis that as a matter of law there could be no liability of a landlord-owner under the undisputed facts asserted by the appellant.

The appellant, his wife, their two children, and the wife's sister were paying guests at the Chateau International Travel Inn in Brownsville. The family had registered at the motel around the first part of June 1971 for a one week stay. On the second or third day of their stay, Jeffrey

and his younger brother were playing in the courtyard area of the motel which included the area around the swimming pool. In close proximity to the pool was a square brick wall which was built around the swimming pool equipment. It was located in the patio of the premises adjacent to the main walkway. The bricks of the structure had been laid with large openings in between in order to provide both ventilation for the equipment and a decorative effect to the wall. The two brothers climbed on the wall while playing. When Jeffrey was . . . "pretty high" . . . on the structure, he fell and a section of the bricks from the upper section of the wall fell on him injuring his left foot. The suit was brought against "Leon Horn and Muriel Horn individually, and doing business as Chateau International Travel Inn, defendants". It appears from the record that International Insurance Company, Inc., the lessee of the motel, was never made a party to the lawsuit. The lessee apparently abandoned the leased premises after about a year of operations and some several months after the accident took place.

The record shows that in October of 1970 the appellee and his wife purchased the property in Brownsville. On the premises were various buildings which had been operated as a motel. The condition and improvements at the time of purchase were in a state of general disrepair. The appellee did not make any repairs to the motel premises from the time he acquired it in October 1970 to the time when he leased it in January of 1971 since it was his intention to hold it only a short time and lease it to someone who would operate it as a motel. There was no evidence that the appellee knew of the condition of the wall. Appellee leased the motel to International Insurance Company, Inc. of Atlanta, Georgia, herein referred to as "International". The lease from appellee to International contained two pertinent provisions:

"(1) The lessee, International, agrees to keep the premises in good repair and;

"(2) The lessee also agrees to assume all liability on account of any injury, loss or damage on the premises."

After International took over as lessee, it cleaned up the premises and began operating the motel under the name Chateau International Travel Inn.

Appellant's single point of error is directed to the trial court's entry of the summary judgment because appellant contends that there are issues of fact as to whether the *landlord was negligent* in each and all of the following respects:

(a) In failing to discover the defect by means of reasonable inspection;

(b) In failing to repair the defect;

(c) In failing to require their lessee to repair the defect prior to admitting the public to the motel; and

(d) In failing to post an appropriate warning of the dangerous and defective condition of the wall.

The question before us when the facts are undisputed, is whether from such summary judgment record, the defendant has established a right to such judgment as a matter of law. Rule 166–A, Texas Rules of Civil Procedure; Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex. Sup.1970).

■ The law governing liability of a landlord to "invitees and servants of tenants" is well established in Texas. ". . . The rule in this State and most of the other States seem to be that, where there is no agreement by the landlord to repair the demised premises, and he is not guilty of any fraud or concealment by failing to disclose hidden defects of which he has knowledge, the tenant takes the risk of their safety, and the landlord is not liable to him or to any person entering under his title or by his invitation for [injury caused] by reason of their unsafe condition. . . ." Morton v. Burton-Lingo Co., 136 Tex. 263, 150 S.W.2d 239 (Tex. Comm'n.App.1941, opinion adopted) quot-

ing from the holding of the Court of Civil Appeals, 126 S.W.2d 727 (Tex.Civ.App.— Eastland 1939); 35 Tex.Jur.2d Landlord and Tenant § 118, p. 619.

■ The apparent rationale for this general rule of non-liability for a landlord was recognized very early in Texas. The Supreme Court in the case of Marshall v. Heard, 59 Tex. 266 (1883) quoted from Shearman & Redfield on Negligence and said: "Those who claim upon the ground that they were invited into a dangerous place must seek their remedy against the person who invited them. If they are guests of the tenant, he, and not the landlord, is the person from whom they must seek redress for injuries caused by defects in the premises". Likewise, in accord with this holding is Buffalo Lakes v. McGrew, 285 S.W.2d 483 (Tex.Civ.App.—Amarillo 1956, n.r.e.).

Under Texas law there are several exceptions to this rule of non-liability of the landlord. One exception is where the landlord agrees to make repairs to the property. Another exception is where the landlord is guilty of fraud or concealment in failing to disclose hidden defects of which he has knowledge. Perez v. Raybaud, 76 Tex. 191, 13 S.W. 177 (1890); Yarbrough v. Booher, 141 Tex. 420, 174 S.W.2d 47 (1943). See 88 A.L.R.2d 586. In the case before us, neither of these exceptions are alleged.

■ A third exception to the general rule exists where the landlord-lessor maintains control over certain portions of the premises. Where an injury results from a defective condition which is under the control of the landlord, such control by him, makes him, and not his tenant liable. See O'Connor v. Andrews, 81 Tex. 28, 16 S.W. 628 (1891); Taylor v. Gilbert Gertner Enterprises, 466 S.W.2d 337 (Tex.Civ.App.— Houston 1st Dist. 1971, n.r.e). However, again, this is not the case before us.

■ There is still a fourth exception, and that is where a nuisance on the premises exists when the premises are leased.

There, the owner is liable to the general public and to strangers, but not necessarily to the tenant. The Supreme Court states the rule:

"The authorities are abundant sustaining the doctrine that the owner cannot create a nuisance on his premises, and relieve himself of liability to a third person injured thereby, by leasing. It is also the law that he would be liable to a stranger where the defective structure causing the injury is on the premises when they are leased; *but such liability would not exist in favor of the tenant, where there is no contract by the landlord to repair and no fraud, because he does not owe the tenant the duty of repairing, as he does the public and strangers. . . .*" (Emphasis added) Perez v. Raybaud, 76 Tex. 191, 13 S.W. 177, 178 (1890).

Although the plaintiffs have alleged that the brick screen wall was a nuisance concerning which the owner had a duty to discover defects by reasonable inspection and repair, we do not believe that liability on the nuisance theory is tenable under the facts before use.

Nuisance is a term which is incapable of any precise definition. Prosser has written:

"It is astonishing to find that . . . a term which occupies a major part of the field of tort liability has remained almost entirely without consideration or analysis, . . . 'Nuisance,' unhappily, has been a sort of legal garbage can. . . ." Prosser, Nuisance Without Fault, 20 T.L.R. 399, 410 (1942).

The problem is that most definitions of the term have been written attempting to encompass a myriad of case law situations. As a result, the definitions are extremely general so as to encompass any and all situations. These are not of much use. As Justice Greenhill wrote in the Wales Trucking Company case, quoting Prosser:

". . . 'There is no more impenetrable jungle in the entire law than that

which surrounds the word "nuisance." It has meant all things to all men, and has been applied indiscriminately from an alarming advertisement to a cockroach baked in a pie.' (citing authority) There is a general agreement that it is incapable of any exact or comprehensive definition, and we shall attempt none here." Wales Trucking Company v. Stallcup, 474 S.W.2d 184, 186 (Tex.Sup. 1971).

The appellant maintains that the time honored rule that a landlord cannot maintain a nuisance on his property and escape responsibility for such nuisance by leasing the property to another is applicable. Although this rule of law is generally unassailable, it is not relevant here.

 Usually there are two types of nuisances: a public nuisance; and a private nuisance. A public nuisance has been defined as such acts or conditions that are subversive of public order or that constitute an obstruction of public rights. 41 Tex.Jur.2d Nuisances § 7, page 580. A private nuisance generally is one that affects the enjoyment of the lands, tentaments, or hereditaments of others. Soap Corporation of America v. Balis, 223 S.W. 2d 957 (Tex.Civ.App.—Fort Worth 1949, writ ref'd n.r.e.). The Court of Civil Appeals in Lederman v. Cunningham, 283 S. W.2d 108 (Tex.Civ.App.—Beaumont 1955) was faced with the same type of nuisance allegation as in the instant case. There the plaintiff was a business invitee who slipped on a ramp in the doorway of the plaintiff's business establishment. The court rejected the plaintiff's nuisance claim and stated:

"Before a nuisance may properly be said to exist, there must be an invasion of a public right or else of a right that arises from an interest in land. (citing authorities) No right to which the plaintiff was entitled in either of these respects· is claimed to have been invaded, *but only a purely personal right* to which he was entitled because alone of the fact that he was on the premises as an invitee. It

follows, therefore, that in a legal sense and as regards the plaintiff the incline was not, in the respects relied upon, a nuisance". (Emphasis added.)

See Webel v. Yale University, 125 Conn. 515, 7 A.2d 215 (1939) quoting the Lederman case with approval.

 The plaintiff in the case before us was a business invitee of the tenant. Accordingly, he must stand in the tenant's shoes. Just like the tenant, he would be precluded from asserting a claim against the landlord under the facts before us. He cannot recover from the landlord under the theory of a public nuisance. He cannot recover on the theory of a private nuisance either, since it is one that substantially interferes with the use or enjoyment of real property of other landlords in the vicinity. Westwood Development Company v. Esponge, 342 S.W.2d 623 (Tex.Civ.App.—San Antonio 1961, n.r.e.). The brick screen wall did not obstruct or interfere with the public right, health, or order of the community as a whole. Likewise, it had no effect on other landowners. It was neither a public nor a private nuisance.

The appellant relies primarily upon a rule announced in Restatement of Torts, § 359 p. 246 which states as follows:

"359. Land Leased for Purpose Involving Admission of Public

A lessor who leases land for a purpose which involves the admission of the public is subject to liability for physical harm caused to persons who enter the land for that purpose by a condition of the land existing when the lessee takes possession, if the lessor

(a) knows or by the exercise of reasonable care could discover that the condition involves an unreasonable risk of harm to such person, and

(b) has reason to expect that the lessee will admit them before the land is put in safe condition for their reception, and

(c) fails to exercise reasonable care to discover or to remedy the condition, or

otherwise to protect such persons against it."

This rule from the Restatement of the Law of Torts has never been adopted by any of the courts in this State. The effect of adopting this section of the Restatement would be to add still another exception to the general rule of non-liability of a landowner. We are compelled to follow the law as has been announced by the Supreme Court of this State and followed by other Courts of Civil Appeals in Texas. Morton v. Burton-Lingo Co., supra; George v. City of Fort Worth, 434 S.W.2d 903 (Tex.Civ.App.—Fort Worth 1968); City of Fort Worth v. Barlow, 313 S.W.2d 906 (Tex.Civ.App.—Fort Worth 1958, writ ref'd n.r.e.). See also Jackson v. Amador, 75 S.W.2d 892 (Tex.Civ.App.—Eastland 1934, writ dism'd); Yarbrough v. Booher, 141 Tex. 420, 174 S.W.2d 47 (1943).

Judgment of the trial court is affirmed.