869 P.2d 216

Sean L. HAO, Ramona K. Hao, and Lawrence K. Hao, Plaintiffs–Appellants,

v.

The CAMPBELL ESTATE; Herbert C. Cornuelle, Trustee; Fred E. Trotter, Trustee; Wade H. McVay, Trustee; Paul R. Cassiday, Trustee, Defendants–Appellees,

and

Donald T. Nakano, individually; Donna Nakano, individually; Donald T. Nakano dba Hawai'i Raceway Park; Donna Nakano dba Hawai'i Raceway Park; Hawai'i Raceway Park, a Hawai'i corporation; Franklin O. Souza, individually; Mrs. Franklin Souza, individually; Neil Jacobs aka Neal D. Jackaway, individually; Neil Jacobs aka Neil D. Jackaway, dba N.J. Events, Inc.; N.J. Events, Inc., a Hawai'i corporation; Dennis Hethcote; James Pflueger, individually; John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; Doe Trusts 1–10; Doe Trustees 1–10 and Doe Entities 1–10, Defendants.

No. 16581.

Supreme Court of Hawai'i.

March 4, 1994.

George W. Playdon (Wesley H.H. Ching, Cid H. Inouye, M. Lorena Uy and Randall L.K.M. Rosenberg, with him on the briefs), Honolulu, for plaintiffs-appellants.

Kenneth S. Robbins (Vincent A. Rhodes with him on the briefs), Honolulu, for defendants-appellees.

MOON, C.J., LEVINSON, NAKAYAMA and RAMIL, JJ., and CHANG, Circuit Court Judge in Place of KLEIN, J.

NAKAYAMA, Justice.

In June 1987, plaintiff-appellant Sean L. Hao (Sean) was seriously injured in a motorcycle racing accident at Hawai'i Raceway Park (HRP). Following the accident, Sean and his parents (collectively the Haos) filed a complaint in the Circuit Court of the First Circuit, State of Hawai'i, alleging, *inter alia*, negligence on the part of defendant-appellee Campbell Estate.[1] Campbell Estate moved for summary judgment on the ground that, as owner and lessor of the land on which HRP was located, it owed no legal duty of care to the Haos. The circuit court granted the motion. The Haos appealed the summary judgment order. For the following reasons, we affirm.

## I. BACKGROUND

On June 19, 1987, Sean, then eighteen years old and one of the top-ranked motocross[2] racers in Hawai'i, participated in a qualifying race for the upcoming Fourth Annual Aloha Supercross, acknowledged to be the premier motocross racing event in Hawai'i. For the first time, the qualifying race, which the public could pay to watch, was held at HRP, located in the James Campbell Industrial Park. Campbell Estate owned the HRP property, although it did not operate the raceway, having leased it to defendant James Pflueger in 1984.[3]

The race began after sunset. It took place on a track that had been built the day before and was located on the inner perimeter of HRP's oval stock car racing track. Sean raced in two heats. During the first, in

---

1. As used herein, Campbell Estate refers to the Campbell Estate and the Campbell Estate trustees Herbert C. Cornuelle, Fred E. Trotter, Wade H. McVay and Paul R. Cassiday.

2. Motocross is "[a] cross-country motorcycle race over a course of rough terrain, such as steep hills and hairpin curves." *The American Heritage Dictionary* 817 (2d college ed. 1982).

3. The lease was subsequently assigned and reassigned to various individuals, and HRP was subleased and sub-subleased to several individuals during the period relevant to this case.

which he finished in second place, Sean successfully executed four to five "double jumps." In a double jump, a racer jumps over two adjacent hills at once.

Sean's second heat started around 11:30 p.m. On the first lap, as Sean came out of a sharp left-hand turn, he approached the two hills that he had successfully double jumped in the first heat. Perceiving that he had a clear path and enough room to accelerate adequately, Sean decided to attempt another double jump. As he neared the jump, however, Sean realized that he did not have enough speed to make it over both hills, in part because he had been forced to decelerate when an apparently inexperienced racer crossed in front of him. But because he already had committed to attempting the double jump, Sean had too much momentum to slow down enough to maneuver safely over the hills in two separate jumps. He attempted the double jump, but landed short, the chassis of his motorcycle hitting the peak of the second hill. Sean suffered spinal injuries in the crash that left him severely and permanently injured.

On July 11, 1988, Sean and his parents, who were present at the race as spectators, filed a complaint in circuit court against Campbell Estate and others.[4] The complaint, which asserted a variety of claims, essentially alleged that the motocross track and the manner in which the qualifying race was run were unsafe. The complaint alleged, among other things, that the track was defectively designed, that its lighting was inadequate, and that novice racers should not have been put in the same heats with expert racers such as Sean.

As the case developed, it became clear that the Haos sought to hold Campbell Estate liable only for negligence in connection with HRP's allegedly inadequate lighting. They claimed that poor lighting caused shadows to be cast across the motocross track, obscuring

a series of ruts that had developed during the various heats, particularly around the sharp left turn located just before the two hills where Sean crashed. They asserted that Sean's inability to see the ruts contributed to his accident because it forced him to proceed through the turn more slowly than he otherwise would have, leaving him unable to regain enough speed to clear the double jump.

On February 3, 1992, Campbell Estate filed a motion for summary judgment. Relying primarily on the general rule that a lessor is not liable for injuries occurring after a lessee takes possession of the land, *see Restatement (Second) of Torts* § 356 (1965)[5], Campbell Estate argued that it had no legal duty to Sean because, having leased HRP in 1984, it neither possessed nor controlled the raceway when Sean crashed. The Haos opposed the motion, arguing mainly that, under *Restatement (Second) of Torts* § 359 (1965)[6], the general rule of lessor non-liability does not apply when the land is leased for a public purpose and the lessor knows it has a dangerous condition. The Haos argued that when Campbell Estate leased HRP in 1984, it knew that the raceway would continue to stage races for the public to watch and knew that the lighting at the raceway was dangerously inadequate.

A hearing on Campbell Estate's motion for summary judgment was held on March 10, 1992. The circuit court filed an order granting the motion on June 16, 1992. The Haos appeal from that order.

## II. *STANDARD OF REVIEW*

This court reviews the award of summary judgment under the same standard applied by the trial court. *Kaneohe Bay Cruises, Inc. v. Hirata*, 75 Haw. 250, 257–258, 861 P.2d 1, 6 (1993). Pursuant to Hawai'i Rules of Civil Procedure 56(c) (1990),

---

4. The other defendants included the lessees and sublessees of HRP, the promoter of the qualifying race, and the designer of the motocross track. Except for Campbell Estate, all of the defendants have settled with the Haos.

5. *Restatement (Second) of Torts* § 356 (1965) provides that, except in certain situations:

a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession.

6. *See infra* section III.A.

summary judgment is proper when the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.*

## III. DISCUSSION

### A. The Public Use Exception Applies in Hawai'i

 A negligence action lies only when the defendant owes a duty to the plaintiff. *Birmingham v. Fodor's Travel Publications, Inc.*, 73 Haw. 359, 365–66, 833 P.2d 70, 74 (1992). To hold Campbell Estate liable for negligence, the Haos must establish that Campbell Estate owed a legal duty to Sean.[7] The Haos claim that the primary basis for such a duty is *Restatement (Second) of Torts* § 359. That section (often called "the public use exception") provides:

A lessor who leases land for a purpose which involves the admission of the public is subject to liability for physical harm caused to persons who enter the land for that purpose by a condition of the land existing when the lessee takes possession, if the lessor

(a) knows or by the exercise of reasonable care could discover that the condition involves an unreasonable risk of harm to such persons, and

(b) has reason to expect that the lessee will admit them before the land is put in safe condition for their reception, and

(c) fails to exercise reasonable care to discover or to remedy the condition, or otherwise to protect such persons against it.

*Restatement (Second) of Torts* § 359 (1965). *Cf. Restatement (Second) of Property*, Landlord & Tenant § 17.2 (1977) (substantively identical to *Restatement (Second) of Torts* § 359).

The threshold question we must decide is whether § 359 applies in Hawai'i. Our analysis of that question is guided by several basic principles. First,

[t]he existence of a duty, that is, whether such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of a plaintiff who has suffered invasion is entitled to legal protection at the expense of a defendant—is entirely a question of law.

*Birmingham*, 73 Haw. at 366, 833 P.2d at 74–75. Second, "whether a duty exists is a question of fairness that involves a weighing of the nature of the risk, the magnitude of the burden of guarding against the risk, and the public interest in the proposed solution." *Doe v. Grosvenor Properties (Hawaii) Ltd.*, 73 Haw. 158, 162, 829 P.2d 512, 515 (1992) (citing *King v. Ilikai Properties, Inc.*, 2 Haw. App. 359, 363, 632 P.2d 657, 661 (1981)). Third, we will not "impose a new duty upon members of our society without any logical, sound, and compelling reasons taking into consideration the social and human relationships of our society." *Johnston v. KFC Nat'l Management Co.*, 71 Haw. 229, 232–33, 788 P.2d 159, 161 (1990).

There are, in our view, "logical, sound, and compelling reasons" for imposing a duty on lessors under the circumstances outlined in § 359.

We note initially that the public use exception, as described in § 359, has deep roots. At common law a non-possessory lessor generally had no duty to protect a lessee or others on the land against harm from dangerous conditions existing at the time of the lease. *Restatement (Second) of Torts* § 356 comment a (1965); W.P. Keeton, *Prosser & Keeton on the Law of Torts* § 63, at 434–35 (5th ed. 1984) (hereinafter *Prosser & Keeton* ).

To avoid its often harsh consequences, modern courts developed a number of exceptions to the general rule, shaping a doctrine of premises liability that was more compatible with contemporary social and economic

---

7. The Haos have failed to preserve as an issue on appeal any argument that Campbell Estate owed a duty to Sean's parents that was independent of a duty owed to Sean. Hawai'i Rules of Appellate Procedure 28(b)(4) (1985). In this case, there-fore, Campbell Estate's liability, if any, to Sean's parents, plaintiffs-appellants Ramona K. and Lawrence K. Hao, is completely derivative of, and dependent on, any liability it may have to Sean.

conditions. In general, those exceptions, including the public use exception, were

> due in large part to increasing recognition of the fact that tenants who lease defective premises are likely to be impecunious and unable to make the necessary repairs which their own safety and that of others may demand; that one who is in possession of the premises only for a limited term does not have the same incentive to maintain them in good condition as the lessor to whom they will revert at the end of the lease; and that the landlord who receives benefit from the transaction in the form of rent may properly be required to assume in return at least certain limited obligations with respect to the safety of others.

*Restatement (Second) of Torts* § 356 comment a.[8]

While the older cases relied on several rationales for the public use exception, including implied invitation and nuisance,[9] the real justification is the policy-based one that a lessor's "responsibility to the public is so great that he will not be permitted to shift it to the tenant, and he may not escape responsibility for the use of his land to be used in a manner involving a public, rather than a private, danger." *Prosser & Keeton* § 63, at 438 (footnote omitted). *See also Restatement (Second) of Torts* § 359 comment a. Justice Cardozo stated it more simply when he said, "the nature of the use itself creates the duty[.]" *Junkermann v. Tilyou Realty Co.*, 213 N.Y. 404, 108 N.E. 190, 191 (1915).

■ We agree that the nature of land leased for a public use imposes a duty of care upon its lessor. First, people invariably enter public places with the reasonable expectation that they are kept in good repair, and the public therefore has an important inter-est in encouraging lessors to make sure that their premises are, in fact, safe. That interest is especially strong when the potential extent of the harm is great, as when the public gathers in one place.[10]

■ Second, the duty under § 359 is triggered only in reasonably circumscribed circumstances. It applies only when the lessor knows, or should know, that an unreasonably dangerous condition exists and that the lessee will admit the public before rectifying the dangerous condition. Thus, as a general matter, only those in a position to protect unsuspecting persons from harm have a duty to do so. In that sense the duty under § 359 is not very different from the duty we have imposed on lessors in other circumstances. For instance, a lessor has a duty to warn a lessee of dangerous conditions known to the lessor but not known or obvious to the lessee, even when the dangerous condition exists in an area not controlled by the lessor. *Kole v. AMFAC, Inc.*, 69 Haw. 530, 750 P.2d 929 (1988). *Cf. Birmingham*, 73 Haw. at 379–83, 833 P.2d at 81–82 (occupier who invites a person onto its land to use adjoining property not under its control has a duty to warn the invitee of extremely dangerous conditions on the adjoining property that are known to the occupier, but not readily apparent to an invitee of ordinary intelligence) (citing *Littleton v. State*, 66 Haw. 55, 656 P.2d 1336 (1982); *Kaczmarczyk v. City & County of Honolulu*, 65 Haw. 612, 656 P.2d 89 (1982); *Kamakawiwoole v. State*, 6 Haw.App. 235, 718 P.2d 1105 (1986)).

Finally, we think that one receiving a benefit from the public use of his or her land should bear at least some of the attendant costs. While § 359 does not require that the premises be leased for valuable consider-

---

8. In addition to the public use exception, other exceptions to the rule of non-liability generally apply when: there is a hidden dangerous condition on the premises of which the lessor is aware, but of which the lessee is not; the premises are still in the control of the lessor; or the lessor has negligently repaired the premises or failed to perform on his/her contractual obligation to repair. *Restatement (Second) of Torts* §§ 357–62 (1965).

9. *See Prosser & Keeton* § 63, at 438; Annotation, *What Constitutes a "Public" Use Affecting Landlord's Liability to Tenant's Invitees for Defects in Leased Premises*, 17 A.L.R.3d 873, 879–82 (1968).

10. We note, however, that the applicability of § 359 does not depend on the number of people who enter the premises at one time; it applies to premises leased for the admission of the public even though they are expected to, and do, enter in small numbers at one time. *Restatement (Second) of Torts* § 359 comment d.

ation, *Restatement (Second) of Torts* § 359 comment g, a lessor undoubtedly receives some sort of benefit, pecuniary or otherwise, when land is leased for public purposes. Given the nature of the risks involved and the reasonably limited circumstances in which the duty under § 359 applies, we think it is only fair that in return for those benefits the lessor shares some of the responsibility for the public's safety.

In short, we think that there are good reasons to impose a duty of care on lessors under the circumstances described in § 359. We therefore hold that § 359 applies in this jurisdiction.

### B. *Application of the Public Use Exception*

■ Having decided to adopt § 359 as a general matter, we turn to the question whether it applies under the facts of this case.

Campbell Estate argues that it cannot be held liable under § 359 because Sean was injured in an area of HRP—the motocross track—that was not open to the general public, but was accessible to only a select few, such as racers and race officials. It points to comment f to § 359, which states:

> The lessor's liability is limited to those parts of the premises which, under the express or implied terms of the lease, are to be thrown open for the admission of the public. Thus the lessor has no liability under this Section to a customer in a leased restaurant who is injured when he wanders into the kitchen.

The Haos appear to concede that liability under § 359 is limited to those areas "thrown open for the admission of the public." They simply argue that whether such a limitation applies in this case—*i.e.* whether the motocross track was an area open to the public—is a question of fact that should be left to the jury to decide.

However, the relevant facts are not in dispute. There is no question that Sean was injured on the motocross track. There is also no question that the motocross track was intended to be, and was, an area of limited access. That is, spectators who came to watch the races at HRP were not free to wander onto the track; only a limited group of persons, such as racers and officials, could traverse the track. Thus, because there are no factual matters for a jury to resolve, the question whether the motocross track was an area open to the public within the meaning of comment f is one of law and not, as the Haos contend, of fact.

We conclude, as a matter of law, that, because the motocross track was off-limits to members of the general public who had come to watch the race, it was not "an area thrown open for the admission of the public." Under comment f, an area open to the public means an area open to the public *generally*. It does not mean an area to which only a select few have access. The example given in comment f—that a restaurant's kitchen is not an area thrown open to the public—makes that plain. So does the illustration offered in *Restatement (Second) of Property*, Landlord & Tenant § 17.2, which, as noted, is substantively identical to § 359:

> L leases a building to T to be operated as a grocery store. At the time of the lease, there is an unprotected stairwell in the storage room, an area not normally open to the public. A, a patron of the store, asks to see the manager and is directed to pass through the storage room to find the office. While walking through the storage room A falls down the unprotected stairwell and is injured. L is not liable to A under the rule in this section.

*Restatement (Second) of Property*, Landlord & Tenant § 17.2 comment f, illustration 6. *See also Strade v. Ryan*, 97 A.D.2d 880, 470 N.Y.S.2d 707 (1983) (no liability under New York's public use exception where injury occurred in an area of a restaurant that was "not open to the public but was used only by employees of [the owner/lessor]."). We see no principled basis for distinguishing a motocross track that is open only to a few from a storage room or restaurant kitchen that is similarly off-limits to the general public.

Were we to conclude otherwise—that is, were we to reject the limitation described in comment f, as the Haos implicitly ask us to do—we would read the "public" out of the public use exception. "Public" connotes non-

exclusivity. *Black's Law Dictionary,* for instance, defines public (when used as an adjective) as meaning, *inter alia,* "[c]ommon to all or many; general; open to common use." *Black's Law Dictionary* 1227 (6th ed. 1990). Under that definition, the motocross track was not a "public" area, because it was not "open to common use."

More importantly, by ignoring the limitation described in comment f, we would be expanding § 359 far beyond its intended purpose, which is, after all, to protect the public at large. That purpose is not advanced by exposing non-possessory lessors to liability for injuries occurring in restricted areas of an otherwise public premises. We are not willing, under the rubric of a *public* use exception, to impose a duty on lessors to take measures to protect against injuries occurring in areas not intended to be open to the public simply because another part of a leased premises happens to be open to the public.

We note that the Washington Supreme Court has reached the same conclusion on facts closely analogous to those of the present case. In *Regan v. City of Seattle,* 76 Wash.2d 501, 458 P.2d 12 (1969), the court rejected a claim that the public use exception applied when a boy was injured when he lost control of his "go-cart" during a race at the Seattle Center Coliseum. 76 Wash.2d at 503, 458 P.2d at 14. The boy and his father sued, among others, the City of Seattle as the lessor of the coliseum, claiming the public use exception as one basis for liability. *Id.* at 504–05, 458 P.2d at 14–15. The City of Seattle moved for summary judgment in the trial court and its motion was granted. *Id.* at 503, 458 P.2d at 14.

The Washington Supreme Court held that the public use exception did not apply: [11]

[L]iability under [the public use] exception only extends to injuries suffered by members of the public and which occur in that portion of the premises intended to be open to the public. We hold that this exception does not apply to a participant in a race who was injured on the race course and not in any area thrown open to members of the public.

*Id.* at 505, 458 P.2d at 14–15 (citations omitted).[12]

Because Sean was injured in an area of HRP not thrown open for the admission of the public, we hold that § 359 cannot be a basis for Campbell Estate's liability to Sean or his parents.

### C. *Restatement § 358*

The Haos make passing reference to *Restatement (Second) of Torts* § 358 (1965) as an alternative basis for liability. Section 358 provides:

(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if

(a) the lessee does not know or have reason to know of the condition or the risk involved, and

(b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.

(2) If the lessor actively conceals the condition, the liability stated in Subsection (1) continues until the lessee discovers it and has reasonable opportunity to take effec-

---

11. The supreme court reversed the summary judgment on other grounds. 76 Wash.2d at 505–08, 458 P.2d at 15–16.

12. The court cited *Restatement (First) of Torts* § 359 (1934), which is slightly different from *Restatement (Second) of Torts* § 359 (*e.g.,* the latter was expanded to include premises into which the public enters in small numbers at one time, while the former insisted upon a large number of persons). The two are not different,

however, with respect to the requirement that the injury occur in a portion of the premises intended to be open to the public. *Compare Restatement (First) of Torts* § 359 comments a and b *with Restatement (Second) of Torts* § 359 comment f. *See* cases cited in Annotation, *What Constitutes a "Public" Use Affecting Landlord's Liability to Tenant's Invitees for Defects in Leased Premises,* 17 A.L.R.3d 873, 894–97 (1968).

84

tive precautions against it. Otherwise the liability continues only until the vendee [lessee] has had reasonable opportunity to discover the condition and to take such precautions.

*Cf. Restatement (Second) Property,* Landlord & Tenant § 17.1 (1977) (substantively identical to *Restatement (Second) of Torts* § 358); *Kole,* 69 Haw. 530, 532 n. 1, 750 P.2d 929, 930 n. 1.

Campbell Estate would be subject to liability under § 358 only if the lessees (or sublessees) of HRP did not know or have reason to know that the track's lighting was dangerously inadequate. *Restatement (Second) of Torts* § 358(1)(a) and comment b. The Haos, however, have failed to adduce any facts demonstrating that that was the case. Indeed, in light of their position that the defects in the lighting were as plain as day,[13] let alone undisputed testimony that complaints about HRP's lighting prompted a sublessee to add lights before the qualifying race,[14] any such argument would be untenable.

Furthermore, the Haos do not argue that Campbell Estate concealed the allegedly in-

adequate lighting. Thus, under § 358(2) Campbell Estate's liability, if any, would continue only until the lessees had a reasonable opportunity to discover and remedy the problem. The undisputed testimony that additional lighting was put in place before the qualifying race conclusively demonstrates that the lessees had a reasonable opportunity to discover and repair any lighting problems during the three years between the time of the lease and Sean's accident.

Accordingly, Campbell Estate is not liable to Sean or his parents under § 358.

## IV. CONCLUSION

Based on the foregoing, we affirm the order granting Campbell Estate's motion for summary judgment.

---

**13.** One of the Haos' lighting experts, for instance, stated in an affidavit that a simple inspection of HRP would have revealed the lighting defects. The Haos also have described the lighting as "grossly deficient."

**14.** Defendant Denis Hethcote, designer of the motocross track, testified by deposition that de-

fendant Franklin Souza, one of the sublessees of HRP, added lighting after several stock car racers publicly complained about HRP's poor lighting.