Tim ENDSLEY, Appellant

v.

JOHNSON COUNTY SHERIFF'S POSSE, INC., a Texas Corporation, Appellee.

No. 10–94–190–CV.

Court of Appeals of Texas, Waco.

June 28, 1995.

Rehearing Overruled Aug. 2, 1995.

Ted Hollen, Austin, for appellant.

Rhonda Johnson Byrd, Belinda A. Vrielink, Thompson, Coe, Cousins & Irons, Dallas, for appellee.

Before THOMAS, C.J., CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

This is a negligence case. Through two points of error, appellant Tim Endsley argues that the trial court erred in granting appellee's motion for summary judgment on the grounds that appellee, Johnson County Sheriff's Posse, Inc. (the Posse), owed him no duty. We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Posse owns a rodeo arena that it leases to various tenants who wish to use it for functions such as dog shows, barrel races, roping contests, and 4–H events. On May 31, 1992, the Posse entered into an oral lease agreement with Teresa McLendon and Cynthia Skinner (hereafter the lessees) whereby they would rent the arena for one day, on June 2, 1992, for the purpose of conducting a barrel race where the public would be invited.

On June 2, Endsley attended the barrel race at the arena. While watching the race, he was struck in the eye by either a rock or a small clump of dirt that was most likely kicked into the air by a horse.[1] Endsley's eye injury was severe, and he brought suit on a negligence theory against the Posse to recover his medical expenses and attorney's fees.

█ Under the opinion that the rock was kicked into the air from the floor of the arena, Endsley argued, among other things, that the Posse had breached its duty to provide him a safe place to watch the barrel race. More specifically, Endsley argued that the Posse was negligent in failing to make certain that the dirt in the arena was free from rocks and other such objects that could be kicked into the air by the animals competing in the races.[2] The Posse responded with a motion for summary judgment, arguing that it owed no duty to Endsley because the Posse had relinquished control over the entire arena, including the dirt floor, when the lessees took possession on June 2.

## II. THE LAW ON SUMMARY JUDGMENT

█ The standards for reviewing a motion for summary judgment are well-established. They are:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor.

Nixon v. Mr. Property Management Co., Inc., 690 S.W.2d 546, 548–549 (Tex.1985). Summary judgment is proper for a defendant if the summary judgment proof conclusively establishes that no genuine issue of material fact exists concerning one or more of the essential elements of the plaintiff's cause of action, such as duty. See Munoz v. Gulf Oil Co., 693 S.W.2d 372, 373 (Tex.1984);

---

1. Because we are required to construe the facts in the light most favorable to the non-movant, we will assume that Endsley was struck by a rock. See Nixon v. Mr. Property Management Co., Inc., 690 S.W.2d 546, 548–549 (Tex.1985).

2. To prevail under a negligence theory, Endsley must prove the following elements of a premises liability cause of action: (1) actual or constructive knowledge of some condition on the premises by the lessor; (2) that the condition posed an unreasonable risk of harm; (3) that the lessor did not exercise reasonable care to reduce or eliminate the risk; and (4) that the lessor's failure to use such care proximately caused his injuries. See Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex.1992).

*Goldberg v. United States Shoe Corp.,* 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982). With these principles in mind, we look to the summary judgment evidence.

### III. THE SUMMARY JUDGMENT EVIDENCE

The summary judgment evidence was uncontroverted that, under the lease agreement, the Posse was the only party that could bring dirt into the arena and that the dirt present in the arena on June 2 was the same dirt brought into the arena when it opened three or four years earlier. Both the lessees and the Posse were aware that rocks may have been present in the dirt of the arena. The evidence was also uncontroverted that, once the lessees took possession of the arena on June 2, they were solely responsible for preparing the dirt in the manner they saw fit for the barrel races.[3] The dirt used in dog shows, barrel races, and roping contests is prepared differently according to the nature of the event and the particular preferences of the event's director. Consequently, the Posse granted the sponsors of the events held at the arena absolute discretion in determining how the dirt should be prepared and provided maintenance equipment to the sponsors so they could prepare the dirt according to their own specifications. Based upon this evidence, the Posse argued that only the lessees, and not the Posse, owed a duty to the spectators of the race. The trial court apparently agreed.

3. There was summary judgment evidence that the lessees were granted access to the arena either two or three days prior to June 2; however, the summary judgment evidence did not indicate the extent to which the lessees would have been able to prepare the arena prior to June 2.

4. Section 359 provides:

A lessor who leases land for a purpose which involves the admission of the public is subject to liability for physical harm caused to persons who enter the land for that purpose by a condi-

### IV. WHO BEARS THE DUTY TO MAKE THE PREMISES SAFE?

As a general rule, "a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession." *Brownsville Navig. Dist. v. Izaguirre,* 829 S.W.2d 159, 160 (Tex.1992) (quoting RESTATEMENT (SECOND) OF TORTS § 356 (1965)). The general rule, while appealing in most circumstances, incorrectly describes the law in a number of different landlord-tenant situations, and the Restatement, accordingly, has identified six exceptions to it: where the lessor contracts to make repairs (§ 357); where the lessor fails to disclose to the lessees dangerous conditions of which the lessor knows (§ 358); where the land is leased for public admission (§ 359); where the lessor retains part of the leased premises in his control which the lessee is entitled to use (§ 360); where part of the premises is retained by the lessor but is necessary for the part leased to the lessee (§ 361); and where the lessor makes negligent repairs (§ 362). *See Garza–Vale v. Kwiecien,* 796 S.W.2d 500, 502 n. 3 (Tex.App.—San Antonio 1990, writ denied); *see also Izaguirre,* 829 S.W.2d at 160–161. Texas courts, by and large, have accepted section 356 as a correct statement of the law and have adopted the exceptions identified in sections 357 to 362. *Garza–Vale,* 796 S.W.2d at 502. Section 359, however, has not received the same welcome as the others. In fact, we are aware of only one Texas court that has considered the merits of section 359 and that court expressly declined to adopt it. *See Wallace v. Horn,* 506 S.W.2d 325, 329–330 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.).[4] The *Wallace* court decided that it saw no reason to add yet

tion of the land existing when the lessee takes possession, if the lessor
    (a) knows or by the exercise of reasonable care could discover that the condition involves an unreasonable risk of harm to such persons, and
    (b) has reason to expect that the lessee will admit them before the land is put in safe condition for their reception, and
    (c) fails to exercise reasonable care to discover or to remedy the condition, or otherwise to protect such persons against it.
RESTATEMENT (SECOND) OF TORTS § 359 (1965).

another exception to the general rule of non-liability for a landlord, which, as the *Wallace* court understood, provides that:

> Where there is no agreement by the landlord to repair the demised premises and he is not guilty of any fraud or concealment by failing to disclose hidden defects of which he has knowledge, the tenant takes the risk of their safety and the landlord is not liable to him or to *any other person* entering under his title or by his invitation for injury caused by their unsafe condition.

*City of Fort Worth v. Barlow*, 313 S.W.2d 906, 917 (Tex.Civ.App.—Fort Worth 1958, writ ref'd n.r.e.) (emphasis in original).

The authors of section 359 recognized, first, that people invariably enter public places with the reasonable expectation that they are kept in good repair and, second, that the landlord should bear a duty to the public when he knows, or should know, that dangerous conditions exist on the leased premises and the lessee will admit the public before rectifying them. *Hao v. Campbell Estate*, 76 Haw. 77, 869 P.2d 216, 220 (1994); *see also* RESTATEMENT (SECOND) OF TORTS § 359 cmt. a. The wisdom of this rationale has been recognized in a number of jurisdictions across the United States who have cited section 359 with favor. *Hao*, 869 P.2d 216, 219–222; *Great Atl. & Pac. Tea Co., Inc. v. Wilson*, 408 N.E.2d 144, 149 (Ind.App.1980); *Borders v. Roseberry*, 216 Kan. 486, 532 P.2d 1366, 1370 (1975); *Roth v. Zukowski*, 757 S.W.2d 581, 583–584 (Mo.1988) (en banc); *Martin v. The Maintenance Co., Inc.*, 588 F.2d 355, 358 n. 2 (2nd Cir.1978) (applying New York law); *Jones v. Three Rivers Management Corp.*, 483 Pa. 75, 394 A.2d 546, 553 (1978); *Utesch v. Atlas Motor Inns, Inc.*, 687 F.2d 20, 23 (3rd Cir.1982) (applying the law of the Virgin Islands). Still other jurisdictions have expressly adopted and followed section 359. *Spain v. Kelland*, 93 Ariz. 172, 379 P.2d 149, 151–152 (1963); *Graves v. United States Coast Guard*, 692 F.2d 71, 73–74 (9th Cir.1982) (applying California law);

*Dalmo Sales of Wheaton, Inc. v. Steinberg*, 43 Md.App. 659, 407 A.2d 339, 351–352 (1979); *Brunton v. Ellensburg Washington Lodge No. 1102 of the Benevolent and Protective Order of Elks*, 73 Wash.App. 891, 872 P.2d 47, 48–49 (1994).[5]

Coinciding with this acceptance by American courts of section 359, along with the several other exceptions to section 356, has come a trend of moving away from the strict common law rule of *caveat emptor* in the lessor-lessee context and displacing it with the public policy requiring those who knowingly permit the public to enter premises under their control to make those premises safe for the public's use. *Brunton*, 872 P.2d at 49; *Pagelsdorf v. Safeco Ins. Co. of Am.*, 91 Wis.2d 734, 284 N.W.2d 55, 59–60 (1979). The purpose of section 356 makes sense in relation to the agrarian economy and culture from which it originated when lessees would rent property for years at a time for the purpose of growing crops or raising livestock. *Pagelsdorf*, 284 N.W.2d at 59 (quoting *Sargent v. Ross*, 113 N.H. 388, 308 A.2d 528, 530 (1973)). But in this modern day when property is leased by lessees not for the utility of the land, itself, but for the temporary use of the buildings contained thereon, less and less justification remains for expecting the lessee to discover and repair dangerous defects on the property. *Id.; see also* RESTATEMENT (SECOND) OF TORTS § 356 cmt. a, h. The evolution of this trend can be attributed to the realization that the public must be protected from dangerous conditions present on another's property open to them and an attempt to place the burden of repairing the defects with the party best suited to fulfill that responsibility. Section 359 comports with the development of this trend.[6]

The merit of section 359 can be seen particularly well under the facts in *Brunton*. The mother of a bride-to-be rented a hall owned by the Elks for the purpose of holding a reception after her daughter's wedding. *Brunton*, 872 P.2d at 48. A guest at the

---

5. Our research has revealed only one jurisdiction other than Texas that has expressly disagreed with the prudence of section 359. *Appalachian Power Co. v. Sanders*, 232 Va. 189, 349 S.E.2d 101, 103–104 (1986).

6. We do not, however, believe the trend should go so far as to abolish the general rule of nonliability of landlords as did the court in *Pagelsdorf v. Safeco Ins. Co. of Am.*, 91 Wis.2d 734, 284 N.W.2d 55, 60 (1979).

reception entered the hall and fell down some steps that were difficult to see because of the structure of the hall. *Id.* Of the 80–90 guests at the reception, approximately six tripped on the stairs. *Id.* Under those facts, the public policy of ensuring the safety of the public would not be furthered if the duty of making the premises safe was shifted to the lessee when the lessee is only going to be in possession of the hall long enough to hold a wedding reception.[7] Section 359 answers this problem by placing the duty where it may best be heeded, with the party that has the actual ability to adequately inspect the premises on a regular basis for dangerous conditions and correct them. Understandably, when the lessor leases the premises to the lessee for an extended period of time and the lessee, according to the terms of the lease agreement, assumes the duty to repair any dangerous conditions on the premises, the lessor reasonably should expect the lessee to inspect and maintain the premises to make them safe. *See Wallace,* 506 S.W.2d at 327. But under the facts in *Brunton,* where the lessee is only in possession for a short period of time, it would be futile to expect her to undertake any meaningful repairs to make the premises safe for the public.

The facts of the instant case are similar to those in *Brunton.* The lessees rented the arena for only a day with the purpose of holding an event that was open to the public. There was a dangerous condition present on the premises that ultimately resulted in an injury to Endsley. We hold that section 359 applies under these facts.

■ Without considering subsections (a) and (b) of section 359, we find that Endsley has raised a fact issue at least concerning subsection (c), namely, whether the Posse failed to exercise reasonable care to discover the rocks, to remedy the condition, or otherwise to protect the public against the rocks being kicked into the air by horses. No summary judgment evidence was presented to indicate that the Posse met its duty to remedy the condition. This absence of evidence is sufficient to warrant a remand to the trial court on the ground that a factual issue exists.

We sustain Endsley's two points of error and the judgment is reversed and remanded.

---

7. We are not holding that the lessee bears no duty to warn the public about any known or unknown dangers or to undertake any corrective measures to repair any defects. As the lessee is not a party to this lawsuit, we express no opinion on this issue.