NO. 07-02-0108-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

FEBRUARY 24, 2003

_____

MICHAEL W. MILES,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2000-433,443; HON. JACK D. YOUNG, PRESIDING

_____

Before JOHNSON, C.J., QUINN, J., and BOYD, S.J.[1]

Appellant Michael W. Miles seeks reversal of his conviction for murder by contending 1) the trial court erred in failing to include an instruction in the jury charge on the lesser-included offense of aggravated assault, 2) the evidence is legally and factually insufficient to support the verdict that he caused the victim's death as the primary actor, 3) the evidence is legally and factually insufficient to support the verdict that he caused the

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. TEX. GOV'T CODE ANN. §75.002(a)(1) (Vernon 1998).

victim's death as a party, and 4) the trial court erred in overruling his objection to the inclusion in the charge of an instruction on the law of parties.  We affirm the judgment.

## Background

On January 17, 2000, Mark Alexander (Mark) received a phone call sometime after 5:30 p.m. from appellant who was his co-worker.  Appellant and Mark worked for Preferred Service which was a company specializing in the repair and maintenance of equipment used in the food services industry.  According to Kay Alexander (Kay), Mark's wife, appellant wanted Mark to help with a job that night.  Mark left to supposedly go to appellant's house and told Kay he would be home around 10:00 p.m.  However, Mark did not return, and Kay began to look for him by trying to page him and by calling his cell phone.  The next day, she called his place of employment and discovered that Mark had not come to work.  Appellant was at work, however, and she talked to him.  He told her he had not seen Mark the night before.  Later that day, Kay spoke to appellant again.  At that time, he admitted that Mark had come to his home the previous night.  Appellant also stated that Mark had been drinking, complained about his boss and his marriage, and left after about 30 minutes.[2]

Thereafter, some of Kay's friends located the Suburban that Mark had been driving (a company vehicle) at a gentleman's club.  Kay went to pick up the vehicle and return it to Mark's employer.  Afterward, Kay spoke to appellant again during which time he told the same story about Mark having been at his house for a brief period.  Appellant also told Kay

---

[2] Kay testified that Mark had not been drinking before he left the house on the evening he disappeared.  Ricky Jones, who saw Mark after he left home that night, testified that Mark was not intoxicated and, in fact, seldom drank at all.

that her husband had made a phone call using a flip-style cell phone to someone appellant believed was a girlfriend.[3]  Kay then filed a missing persons report with the police department.  Later, when questioning Ricky Jones (Jones), another friend of Mark's, Kay learned that Mark had gone to his house the night he disappeared to pick up some scales to be used in a cocaine purchase.  Mark told Jones that he was going to buy cocaine from a man with whom he worked.

On February 25, 2000, a worker at a well location in New Mexico discovered a body in a water-filled caliche pit northwest of Hobbs.  The body was identified to be that of Mark.  It was wrapped in a blanket which was wrapped in a blue tarp which was then wrapped in cords and chains.  Two metal wheels were attached to the chains.  It was subsequently learned that Elton Bradshaw (Bradshaw), who was living with appellant at the time Mark disappeared, used to fish in the caliche pit where the body was found. The cause of Mark's death was determined to be blunt force trauma to the head.

After the body was found, appellant was brought to the police station for a third interview.  At that time, he told a story that conflicted with his previous ones.  The next day, appellant voluntarily returned to the police station and stated that Mark had approached him to set up a cocaine deal.  On the night Mark disappeared, appellant claimed that two Hispanic males came to his house in a Cadillac.  He told Mark he would not participate in his drug deal, and Mark got in his car and drove away after motioning for the two Latinos in the Cadillac to follow him.  Appellant was later arrested for the murder.

---

[3]It was determined that Mark did not own a flip-style cell phone, and the last call on the cell phone he did have was placed earlier in the day.

3

***Issue One - Lesser-Included Offense***

In his first issue, appellant argues that the trial court should have granted his request for an instruction to be included in the jury charge on the lesser-included offense of aggravated assault. We overrule the issue.

The State concedes that aggravated assault is a lesser-included offense of murder. *See Cardenas v. State,* 30 S.W.3d 384, 392 (Tex. Crim. App. 2000). Therefore, to be entitled to the instruction, evidence must appear of record which would permit a jury to rationally conclude that appellant is guilty only of the lesser crime. *Schweinle v. State,* 915 S.W.2d 17, 18 (Tex. Crim. App. 1996). It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. *Bignall v. State,* 887 S.W.2d 21, 24 (Tex. Crim. App. 1994). There must be evidence directly germane to the lesser offense; that is, there must be evidence affirmatively showing that appellant only committed the lesser offense. *Id.* And, that evidence may come from any source. *Lugo v. State,* 667 S.W.2d 144, 147 (Tex. Crim. App. 1984).

Here, the evidence indicates that appellant either did nothing to the decedent or that he repeatedly struck the decedent about his head and body with or against a blunt object, placed plastic bags over Mark's head, wrapped him in blankets, tarps, cord, chains and weights, and finally dumped the body into a watery pit. To the extent that appellant denied the commission of any act against appellant, that does not entitle him to an instruction on a lesser-included offense. *Garcia v. State,* 630 S.W.2d 914, 919 (Tex. App.— Amarillo 1982, no pet.) (holding that when a defendant's evidence indicates he is not guilty of any offense, he is not entitled to an instruction on a lesser offense).

4

As to the other alternative, appellant suggests that the evidence permits one to infer that he did not intend to kill Mark and, therefore, he was entitled to an instruction on the lesser offense. Yet, we note that the State indicted appellant for intentionally and knowingly causing the death of Mark, *i.e.* for murder under §19.02(b)(1) of the Texas Penal Code. Furthermore, the very same evidence upon which appellant bases his contention illustrates, nonetheless, an intent to cause serious bodily injury.[4] And, because those acts constituted acts clearly dangerous to human life and it is undisputed that one or more of them caused Mark's death, the evidence also established appellant's guilt for murder under §19.02(b)(2) of the Penal Code.[5] In other words, the evidence before us illustrates that he either committed murder under §19.02(b)(1) or (b)(2). Since it does, it is akin to that before the Court of Criminal Appeals in *Forest v. State*, 989 S.W.2d 365 (Tex. Crim. App. 1999). And, given the absence of any evidence "that appellant was guilty *only* of anything less than *some form of murder*," we like the court in *Forest*, must also conclude that he "was not entitled to any instruction on aggravated assault." *Id.* at 368 (emphasis added). To reiterate, when the acts undertaken cause death and illustrate endangerment to human life and an intent to cause serious bodily injury, one cannot claim entitlement to the lesser-included offense of aggravated assault simply because he may not have intended to kill. *Id.*

---

[4]Indeed, one would be hard-pressed to argue that repeatedly striking the decedent's body and head with or against a blunt object in a manner which could cause death, then placing the decedent's head in plastic bags, wrapping the body in tarps, cord, chain and weights, and dumping the body in a pit is something other than conduct undertaken with an intent to cause serious bodily injury.

[5]One commits murder under §19.02(b)(2) of the Texas Penal Code if the accused "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PEN. CODE ANN. §19.02(b)(2) (Vernon 1994).

5

### *Issue Two - Legal and Factual Sufficiency as Primary Actor*

In his second issue, appellant complains that the evidence is legally and factually insufficient to show he intentionally and knowingly caused Mark's death as the primary actor. We overrule the issue.

The standards by which we review legal and factual sufficiency challenges are well settled. We will not reiterate them but instead refer the parties to *Jackson v. Virginia,* 443 U.S. 307, 309, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1979); *Zuliani v. State,* No. 1168-01, 2003 Tex. Crim. App. LEXIS 26 (Tex. Crim. App. Feb. 5, 2003); and *King v. State,* 29 S.W.3d 556, 562-64 (Tex. Crim. App. 2000) for explanation of the same.

The evidence in this case was circumstantial. However, the following appeared of record. Mark was last seen alive at appellant's house. Appellant and Mark were involved in a drug transaction. Mark's body was found wrapped in material identical to that found in or around appellant's house. A cigarette butt found in appellant's garage and containing his DNA was of the same brand found between several plastic bags tied around Mark's head. Mark's blood was found on a shovel in appellant's garage, and the blood spatter appearing thereon was of a medium velocity consistent with blunt force trauma. Mark's body was discovered at a remote location, a location about which appellant's roommate had knowledge. An inmate in jail with appellant testified that appellant said he had killed a man at his home with a bat because he owed him money for cocaine. The equipment used to weigh the body down was available at the place where appellant and Mark worked. And, appellant told conflicting stories about what happened the night of Mark's disappearance. Viewing this evidence in a light most favorable to the verdict, we conclude that a trier of fact could have rationally found, beyond all reasonable doubt, that appellant

6

knowingly and intentionally caused the death of the victim. Furthermore, that the evidence and testimony of record establishing guilt was circumstantial or contained inconsistencies or was subject to discredit did and does not render the evidence supporting the verdict so weak as to make the verdict clearly wrong or manifestly unjust. Nor does it render the verdict against the great weight and preponderance of the evidence so as to be clearly wrong. It simply created opportunity for the jury to exercise its role as factfinder. Thus, the evidence was neither legally nor factually insufficient to support the verdict.

### Issue Three - Legal and Factual Sufficiency as a Party

Appellant contends in his third issue that the evidence is legally and factually insufficient to show that he is guilty of murder as a party. We overrule the issue.

As previously discussed, the jury found appellant guilty as the primary actor in the murder of Mark. Furthermore, we concluded that the evidence supporting the verdict was both legally and factually sufficient. Therefore, the judgment can be upheld on that basis alone, even if the evidence failed to establish that appellant committed the offense as a party. So, we need not consider issue three. *See Barnes v. State,* 62 S.W.3d 288, 296-299 (Tex. App.—Austin 2001, pet. ref'd) (holding that when different theories, *i.e.* commission of a crime as the primary actor or as a party, are submitted to the jury, a general verdict is sufficient if the evidence supports one of the theories submitted).

### Issue Four - Charge on the Law of Parties

In his final issue, appellant argues that the trial court erred in overruling his objection to submitting a party charge to the jury. The court purportedly erred because there was no evidence warranting the submission. We overrule the issue.

7

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct or by the conduct of another for which he is criminally responsible or both. TEX. PEN. CODE ANN. §7.01(a) (Vernon 1994). Here, the jury was instructed that if they found that a "person or persons unknown" intentionally and knowingly caused the death of Mark by striking him with or against a hard object, and that appellant acting with intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided, or attempted to aid an unknown person or persons to commit the offense, then appellant would be guilty of murder. Yet, we have perused the record for evidence illustrating that appellant was simply a party to a murder committed by another and found none.

As described throughout this opinion, the evidence either showed that appellant did nothing or that he committed the murder on his own or at the behest of others (*i.e* the two Latinos in the Cadillac). Nothing illustrates that someone else committed the murder and appellant merely directed, solicited, encouraged, aided, or attempted to aid the murderer. In short, there was no evidence that anyone, other than appellant, killed Mark. So, a party charge was unwarranted, and the court erred in submitting one.

Nevertheless, our job is not over for now we must assess whether the instruction harmed appellant. In making that determination we find guidance in *Brown v. State,* 716 S.W.2d 939 (Tex. Crim. App. 1986) and *Reyes v. State*, 910 S.W.2d 585 (Tex. App.—Amarillo 1995, pet. ref'd). Both hold that any error in charging the jury on the law of parties is harmless "if the evidence clearly supports appellant's guilt as a primary actor." *Brown v. State,* 716 S.W.2d 939, 946 (Tex. Crim. App. 1986); *Reyes v. State*, 910 S.W.2d

8

585, 593 (Tex. App.—Amarillo 1995, pet. ref'd).[6]  Having previously determined that the evidence was legally and factually sufficient to sustain appellant's conviction as the primary actor, we find that appellant suffered no harm when the trial court mistakenly included the party instruction in its jury charge.

Accordingly, the judgment of the trial court is affirmed.


Brian Quinn
Justice

Do not publish.

---

[6]Appellant suggests that to "clearly" support conviction as the primary actor, the evidence must be of some caliber greater than that needed to establish guilt beyond reasonable doubt.  However, he cites no authority supporting that proposition.  Nor does he explain to what standard the court referred when it used the term "clearly."  Additionally, in applying the test, neither the *Brown* or *Reyes* courts held that the error was harmless because the evidence "clearly" supported conviction as the primary actor; rather, both merely concluded that the evidence was sufficient to support conviction.  And, we found the evidence both legally and factually sufficient to uphold the verdict at bar.  Finally, of the three standards often used to describe the evidentiary burdens of proof, *i.e.* preponderance of the evidence, clear and convincing evidence, and beyond all reasonable doubt, the latter is the most onerous of all.  *See Leal v. Texas Dept. of Protective & Reg. Serv.*, 25 S.W.3d 315, 319 (Tex. App.--Austin 2000, no pet.) (discussing the three evidentiary standards).  Thus, if the evidence is of a quality which would permit the jury to find guilt, beyond *all* reasonable doubt, then it is safe to say that it "clearly" supports the conviction.