Hiroko **SUGIMOTO;** Kimiko **Kodani;** **Mayumi Nukiwa; Eri Omachi; Kuniko Omachi, Plaintiffs–Appellees,**

v.

**EXPORTADORA DE SAL, S.A. DE C.V., Defendant–Appellant.**

No. 93–55716.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 1, 1994.

Decided March 25, 1994.

As Amended July 1, 1994.

Clyde Greco, Jr., Greco & Traficante, San Diego, CA, for defendant-appellant.

Robin Foor, Belmont, CA, for plaintiffs-appellees.

Before: TANG, PREGERSON and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Exportadora De Sal, S.A. De C.V. (Exportadora) appeals from the judgment entered after a bench trial in a wrongful death action brought by the survivors of Katsuo Sugimoto, Yoshihito Kodani and Hideo Omachi (the plaintiffs). We have jurisdiction under 28 U.S.C. § 1330, and affirm.

### FACTS

Exportadora is a manufacturer of salt owned 51 percent by the government of Mexico and 49 percent by Mitsubishi Corporation of Japan. Exportadora is a major producer of salt, which it markets internationally. It has a manufactory of salt at Guerrero Negro, Mexico. The plant is located in a company town. The most convenient city in proximity to Guerrero Negro is San Diego, California. Exportadora maintained an office in San Diego.

It is possible to get to Guerrero Negro from San Diego by bus, but the only convenient way of getting there is by Exportadora arranging a flight from Tijuana, Mexico to Guerrero Negro. For visitors to Guerrero Negro accepted by Exportadora, the practice was for the company to send a van to its San Diego office to transport them to the Tijuana airport. There was no telephone at the plant and it communicated with outside parties by telex to the San Diego office.

On September 4, 1987 an employee of Mitsubishi asked Exportadora to provide transportation for Omachi to Guerrero Negro by car and company plane. Mitsubishi's telex noted that Omachi was a manager for Asahi, one of Exportadora's most important Japanese customers. A second telex from Mitsubishi to Exportadora stated, "We hope that your beautiful explanation and arrangements will charm him very much." A third telex thanked Exportadora for accepting "Omachi's visit to G.N."

On September 18, 1987 Mitsubishi asked Exportadora to arrange for transportation to Guerrero Negro for Sugimoto and Kodani by pick-up truck and company plane. Sugimoto and Kodani were professors of Tottori University in Japan and were interested in an agricultural project at Guerrero Negro. On September 22 Sugimoto and Kodani arrived by air in San Diego and were met by a representative of Exportadora, who arranged for their overnight stay in San Diego. The following day Exportadora had them transported to the Tijuana airport from which they flew in the company plane to Guerrero Negro. The company prepared a schedule

showing that they would return to Tijuana on September 30.

On September 27 Omachi arrived at San Diego and on the following day was transported by Exportadora's van to Tijuana and by company plane to Guerrero Negro. His return was also scheduled for September 30. In Guerrero Negro Omachi, Sugimoto and Kodani were fed in the Exportadora company dining room and were housed without charge at Exportadora's guest quarters.

The company plane was not available on September 30 because of a directors' meeting. An Exportadora employee chartered an air taxi company to carry the scheduled passengers from Guerrero Negro to Tijuana.

Flying in heavy fog on the morning of September 30 in air space of the United States, the pilot of the air taxi crashed into a hill outside of Tijuana and fell on American soil. The district court found the crash due to the pilot's negligence in descending below the proper glide path and in not executing a missed approach when required to do so.

The crash killed the pilot and the passengers.

## PROCEEDINGS

The plaintiffs brought suit against Exportadora. Exportadora challenged the jurisdiction of the district court on the ground of its sovereign immunity under 28 U.S.C. §§ 1603(a), (b)(2) and when the district court held it had jurisdiction, Exportadora appealed to this court. We held that in transporting Omachi, Sugimoto and Kodani Exportadora had been engaged in commercial activity in the United States and so fell within one of the exceptions of the Foreign Sovereign Immunities Act, *viz.* "the action is based upon a commercial activity carried on in the United States by a foreign state." 28 U.S.C. § 1605(a)(2). *Schoenberg v. Exportadora,* 930 F.2d 777 (9th Cir.1991). We found the commercial activity to lie in Exportadora's "arranging transportation for its prospective business partners" in the case of Omachi and appeasing the Mexican government in the case of the transportation provided to Sugimoto and Kodani. *Id.* at 780.

On remand, a bench trial was held in which the district court found Exportadora liable on the basis of several theories of liability. Exportadora appeals.

## ANALYSIS

*Jurisdiction*

■ Exportadora raises again the question as to jurisdiction, contending that despite *Schoenberg,* the issue remains open in the light of *Saudi Arabia v. Nelson,* —— U.S. ——, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). The plaintiffs argue that Exportadora waived jurisdiction after the decision in this court in *Schoenberg.* We need not address that argument, because we hold that under the precise test set by *Saudi Arabia* jurisdiction exists.

According to *Saudi Arabia,* an action is based on commercial activity in the United States if an element of the plaintiff's claim consists in conduct that occurred in commercial activity carried on in the United States. *Id.* —— U.S. at ——, 113 S.Ct. at 1477. In the instant case Exportadora was engaged in commercial activity within the United States when the air taxi flew in United States air space, and an element of the plaintiffs' claim consists in the tortious flying of the plane in United States air space. The jurisdictional requirement of the first clause of § 1605(a)(2) was met.

*Tortious Conduct*

■ On appeal Exportadora argues that the district court found pilot negligence by indulging the presumption that if the plane hit a hill in the fog, the failure must have been the pilot's. On the contrary, the district court eliminated a variety of other possible causes of the crash and relied on the opinion of an aviation accident investigator whom it found credible and reliable. There was no clear error in the district court's conclusion that it was a negligent mistake by the pilot that was the cause of the accident.

*Basis for Liability*

■ Exportadora presses that it should not be held liable for the pilot's negligence when the pilot was the employee of the air taxi, which the district court characterized as "an independent contractor." The general rule is clear that one is not liable for the tortious acts of an independent contractor.

The rule is riddled with exceptions so that there is "only a small area in which the so-called general rule operates." *6 Witkin, Summary of California Law* § 1009 (1987). California law in this respect is in harmony with the *Restatement (Second) of Torts* § 409, comment b, which states that the rule "can now be said to be general only in the sense that it is applied when no good reason is found for departing from it."

Here there is good reason for departing from the already-eroded rule. Exportadora controlled the transportation offered to business visitors to its plant and company town. Exportadora decided whether visitors from abroad were welcome, approved them, arranged for their transportation, paid all the expenses, fed them, determined where they would stay and how they would come and how they would go. Exportadora remains liable for the enterprise, although the air taxi was an independent taxi: "the enterprise, notwithstanding the employment of the independent contractor, remains the employer's" when it "is the party primarily to be benefited ... selects the contractor ... is free to insist upon one who is financially responsible, and to demand indemnity from him, [and] the insurance necessary to distribute the risk is properly a cost of the employer's business." *Van Arsdale v. Hollinger,* 68 Cal.2d 245, 253, 66 Cal.Rptr. 20, 25, 437 P.2d 508, 513 (1968). As a matter of California law Exportadora was liable for the tortious performance of the pilot.

**AFFIRMED.**