Bobbie Rae BAILEY and Melana Bailey, Individually and as the Personal Representatives of the Heirs of the Estates of David Bailey, Sr., and David Bailey, Jr., and as Successors in Interest to the Estates of David Bailey, Sr., and David Bailey, Jr., Deceased; Dan Stout and Myrtle Stout, Individually and as the Personal Representatives of the Heirs of the Estate of Dana Stout Bailey and Successors in Interest to the Estate of Dana Stout Bailey, deceased, Plaintiffs,

v.

UNITED STATES of America; Federal Aviation Administration; Big Island Air, Inc., dba Big Island Air; G. Tom Beard; Activity Information Center, Inc., dba Activity World; Unidentified Global Positioning System Manufacturer (Doe One); Piper "The New Piper"; Dennis O'Leary; The Estate of

Dennis O'Leary; Administrator of the Estate of Dennis O'Leary; Paniolo Greens Limited Partnership; Shell Development Corporation–Greens, Hi Corp.; Perry J. Snyderman; Sheldon H. Ginsberg; Hazel Time LP, a Delaware Limited Partnership; HLS Tyme 2 Shore, A Delaware Limited Partnership; SOSV, LLC, a Delaware Limited Liability Company; Shell Vacations, LLC, an Arizona Limited Liability Company; SVC–Hawaii LP, a Hawaii Limited Partnership; Shell Development Corporation–Greens, a Hawaii Corporation; SDC–Kona, LLC, a Delaware Limited Liability Company; Unidentified Maintenance Company (Doe Two); and Does Three Through One Hundred, Defendants.

Civil No. 01–00558 SOM/KSC.

United States District Court,
D. Hawai'i.

Oct. 10, 2003.

Niall Yamane, O'Reilly, Collins & Danko, San Mateo, CA, for Plaintiffs.

Jill Dahlmann Rosa, (argued on behalf of Defendant the United States of America), Barry Benson, (appeared, but did not argue), U.S. Department of Justice, Civil Division Torts Branch, Washington, DC, E. Mason Martin, (argued on behalf of the Shell Defendants), Elton John Bain, (appeared, but did not argue), Kessner Duca Umebayashi Bain & Matsunaga and Keith K. Hiraoka, (appeared, but did not argue), Roeca Louie & Hiraoka, Honolulu, HI, for Defendants.

### ORDER GRANTING THE SHELL DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

MOLLWAY, District Judge.

## I. INTRODUCTION.

This cases arises out of the crash of a plane operated by Big Island Air, Inc., on September 25, 1999. David Bailey, Sr., David Bailey, Jr., and Dana Stout Bailey were passengers killed in that crash. They had obtained discounted Big Island Air ticket vouchers in exchange for attending a time-share presentation and purchasing a time-share. The motions now before

this court concern claims against the time-share company and the related entity that provided the vouchers.

Plaintiffs are the surviving family members and personal representatives of the Baileys killed in the crash. Although Plaintiffs filed this lawsuit on August 21, 2001, their original Complaint did not name the companies (Defendants Shell Development Corporation–Greens, Paniolo Greens Limited Partnership, SVC–Hawaii, L.P., and Shell Holdings, Inc. (collectively, "Shell Defendants")) connected with the time-share presentation and the selling of discounted Big Island Air ticket vouchers to the Baileys.[1] Those entities were first named in Plaintiffs' First Amended Complaint filed December 5, 2002.

At the hearing on the present motions, Plaintiffs clarified their claims against the Shell Defendants. Plaintiffs limited those claims to a negligent misrepresentation claim and a negligence claim based on *Sugimoto v. Exportadora De Sal*, 19 F.3d 1309 (9th Cir.1994), a plane crash case in which a company was held liable based on negligence under California law. *Id.* at 1311–12.

The Shell Defendants move for summary judgment on the grounds that Plaintiffs' claims against them were untimely filed and that, even if timely, they are unsupportable. This court agrees. Plaintiffs filed their claims against the Shell Defendants more than two years after the crash. Because those claims do not relate back to the date the original Complaint was filed, they are barred by the statute of limitation. Even if the claims are not time-barred, they fail because (1) there is no evidence that the Shell Defendants negligently misrepresented the safety record of Big Island Air, (2) the Shell Defendants owed no duty to the Baileys, and (3) the

waiver of liability language in the Big Island Air ticket vouchers is enforceable. Accordingly, summary judgment is granted in favor of the Shell Defendants on all claims against them.

## II. *STANDARD OF REVIEW.*

Summary judgment shall be granted when

the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *See id.* at 323, 106 S.Ct. 2548. A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.2000).

The burden initially lies with the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp.*, 477 U.S. at 323, 106

---

1. The court grants Plaintiffs' request that the court take judicial notice of certain documents filed with this court. The court takes judicial notice of the filing of those documents and what their contents are, but not of the truth of the contents of those documents.

S.Ct. 2548). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv.*, 809 F.2d at 630 (quotation omitted). At least some " 'significant probative evidence tending to support the complaint' " must be produced. *Id.* (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *Addisu*, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987) (*citing Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348); *accord Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec. Serv.*, 809 F.2d at 631. All evidence and inferences must be construed in the light most favorable to the nonmoving party. *Id.* Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *Id.*

## III. BACKGROUND INFORMATION.

The Shell Defendants are related companies first named as parties to this action in the First Amended Complaint filed on December 5, 2002, more than two years after the fatal plane crash.

It is undisputed that September 25, 1999, is the date that Big Island Air Flight 58 crashed on the slopes of Mauna Loa, Hawaii, killing the pilot and all nine passengers aboard.[2]

In September 1999, the Baileys, all California residents, vacationed in Hawaii. *See* Declaration of Bobbie Rae Bailey (undated, but filed Sept. 25, 2003) ¶ 1, 7; Deposition of Bobbie Rae Bailey (Sept. 19, 2003)[3] at 6. David Bailey, Sr., David Bailey, Jr., and Dana Stout Bailey were among those killed in the crash. Bobbie Rae Bailey did not go on the plane tour.

The Baileys' vacation included a visit to an activity desk in the Keahou Beach Hotel, which was doing business as the King Kamehameha Kona Beach Hotel. Bailey

---

**2.** In her deposition, Bobbie Rae Bailey equivocally stated that the accident happened on the 25th or 26th of September, 1999. *See* Deposition of Bobbie Rae Bailey (Sept. 19, 2003) at 48. All other evidence, however, indicates that the plane crash occurred on September 25, 1999. *See* Big Island Adventures ticket vouchers (indicating a flight date of September 25, 2003); National Transporta-

tion Safety Board, Aircraft Accident Brief, Accident No. DCA99MA088, *available at* **http://www.ntsb.gov/publictn/2001/AAB0102. pdf** (Sept. 26, 2001); *see also* First Amended Complaint (Dec. 5, 2002) ¶ 27.

**3.** At the hearing on these motions, Plaintiffs stated that Bobbie Rae Bailey signed her undated declaration after her deposition was taken on September 19, 2003.

Decl. ¶ 2. Bobbie Rae Bailey believed that the person at this desk was associated with an activity provider called Activity World. This person told the Baileys that they could get discounted tour tickets by attending a sales presentation about timeshare condominiums in Paniolo Greens, on the Big Island of Hawaii. Bailey Decl. ¶ 2.

After attending the time-share presentation and purchasing a time-share, the Baileys were directed to an unmarked activity desk, where they purchased Big Island Air ticket vouchers.[4] Bailey Decl. ¶ 3. Bobbie Rae Bailey says that she did not know who was conducting the time-share presentation at the time she attended it. *See* Bailey Decl. ¶¶ 5 and 8. At the hearing, however, counsel for Bobbie Rae Bailey admitted that the paperwork Bobbie Rae Bailey filled out to purchase the time-share showed that Paniolo Greens Limited Partnership was the company selling or marketing the time-shares.

The Baileys got their ticket vouchers from Big Island Adventures. Bobbie Rae Bailey says that the identity of Big Island Adventures was not disclosed to the Baileys during the time-share presentation, *see* Bailey Decl. ¶ 5, but the Big Island Air ticket vouchers purchased and signed by Bobbie Rae Bailey clearly identify Big Island Adventures as the activity vendor

selling the ticket vouchers. According to the vouchers, "Big Island Adventures" was a name used by Shell Development Corp.-Greens. *See* Ticket Vouchers (Sept. 24, 1999) (attached to the Bailey Depo. (Sept. 19, 2003) as Exhibit 1 (authenticated on pages 63–64 of the depo.)). Bobbie Rae Bailey's signature on the ticket vouchers indicates that, even if she did not later recall who sold her the vouchers, she was indeed given information as to who was selling the vouchers.

Moreover, the Baileys' credit card statement indicates that, on September 24, 1999, the Baileys' credit card was charged for the purchase of the Big Island Air ticket vouchers. According to the credit card statement, the vendor charging for the vouchers was "Paniolo Greens."[5] *See* Shell Defendants Exhibit 100 (redacted copy of Bailey's October 11, 1999, credit card statement).[6] There is no dispute that, at the time of the accident, Paniolo Greens Limited Partnership was registered with the Hawaii Department of Commerce and Consumer Affairs ("DCCA"). Paniolo Greens Limited Partnership's registration papers indicate that its general partner was Shell Development Corporation–Greens (the company identified on the Big Island Air ticket vouchers as doing business as Big Island Adventures). *See* Certificate of Limited Partnership (Jun 16,

---

4. Big Island Adventures allegedly operated a desk that was adjacent to Activity World's desk and that was identified only by a "Concierge" sign. *See* Deposition of Craig Hill (March 19, 2003) at 44–45.

5. Although the Big Island Air ticket vouchers indicate charges of $135 and $193, respectively, the Baileys' credit card was charged $1,004. In her deposition, Bobbie Rae Bailey testified that she paid for four activities, the "Atlantis, the body glove, the luau at King Kamehameha, and Big Island Air." Bailey Depo. at 61. The credit card was thus charged for multiple tour excursions. Bobbie Rae Bailey does not dispute that part of the September 24 charge on her credit card was

a charge by the company (or a related company) that sold the Baileys the Big Island Air ticket vouchers.

6. The ticket vouchers indicate that the Baileys paid for them using a MasterCard credit card. In accordance with its usual practice, the court issued a pre-hearing inclination in the week preceding the hearing. In that document, the court raised the question of whether the Baileys' credit card statement named the vendor that sold the Baileys the Big Island Air ticket vouchers. In response to this question, Plaintiffs produced Exhibit 100 to the Shell Defendants at the hearing. The parties then stipulated to the authenticity of Exhibit 100 and submitted it to the court.

1995) (attached to Watson–Kabei Depo. as PG00022).

Plaintiffs say that they first discovered Paniolo Greens Limited Partnership's identity when they got copies of the vouchers during discovery on October 2, 2002. This argument is supported only by a statement by counsel, not by Plaintiffs themselves. *See* Declaration of Niall Yamane (Sept. 23, 2003). In paragraph 2 of his declaration, the attorney for Plaintiffs states that, "[u]p until October 2002, none of the parties were aware that Activity World did not sell the tickets to the Baileys." Counsel is not competent to testify as to what the Baileys knew and when they knew it. Accordingly, the court disregards his declaration.

The Big Island Air ticket vouchers purchased by the Baileys refer to unnamed activity vendors. In this case, the unnamed activity vendor was Big Island Air, which had a contract (and no other connection) with Big Island Adventures and the other Shell Defendants. The vouchers state: "Big Island Adventures shall not be construed as affiliates of Activity Vendor and are not liable or responsible in any way for Vendor or Vendor's actions." *See* Ticket Vouchers (Sept. 24, 1999).

Bobbie Rae Bailey claims that, when they purchased the Big Island Air ticket vouchers, she asked whether air tours in Hawaii were safe. Bailey Decl. ¶ 7. In her deposition, however, Bobbie Rae Bailey testified that she asked whether the Big Island Air flights were safe, not whether air tours in Hawaii were safe. Bailey Depo. at 68–69.[7] To the extent Bailey's declaration, admittedly made after her deposition was taken, differs from her deposition testimony on this point, the court disregards her declaration. Bailey's declaration appears calculated to raise an issue of fact by differing from her deposition testimony.[8] *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991); *accord Darnell v. Target Stores*, 16 F.3d 174, 176–77 (7th Cir.1994) (parties cannot thwart the purpose of Rule 56 by creating issues of fact through affidavits that contradict their own depositions). The person at the activity desk told Bailey that the Big Island Air flights were safe. Bailey Depo. at 69.

Bobbie Rae Bailey claims that, had she known about "the poor safety record of the Hawaiian tour flight industry," the Baileys would not have purchased the Big Island Air ticket vouchers. Bailey Decl. ¶ 7.[9]

7. In her deposition, Bobbie Rae Bailey was asked to describe the person who sold her the ticket vouchers. Bailey said the person was a woman with sandy-colored hair. Bailey Depo. at 66. Bailey then testified that she asked that woman whether the pilot was experienced and told the woman that she wanted a pilot with "gray hair." *Id.* at 68. Asked whether the sandy-haired woman had answered her questions on the pilot, Bailey replied, "Oh, she said, 'It's very safe. There is no—no problem.'" *Id.* at 69. Bailey was then asked whether the woman was "referencing a specific airline when she said it was safe." Plaintiffs' attorney objected, saying that question asked Bailey to speculate as to what the sandy-haired woman was thinking. The question was rephrased: "Did the sandy-colored hair lady say the Big Island Air plane was safe?" Bailey answered "Yes." *Id.* Given this exchange at Bailey's Deposition, the court finds that Bailey was told that the Big Island Air flights were safe, not that airplane tours in Hawaii in general were safe.

8. At the hearing, Plaintiffs argued that the Shell Defendants negligently misrepresented that air tour flights in Hawaii were safe. As the court is disregarding Bailey's declaration to the extent it says that Big Island Adventures told Plaintiffs that air tour flights in Hawaii in general were safe, the court construes Plaintiffs' claim as being a negligent misrepresentation claim based on an alleged statement that Big Island Air was safe.

9. In Plaintiffs'· Opposition to the summary judgment motion raising grounds other than

There is nothing in the record, however, indicating that Hawaii had a poor air safety record for airplane tours at the time of the crash in question. The NTSB report submitted to the court indicates that, between October 1988 and March 1995, there were 34 "incidents" in Hawaii. At most, the NTSB report appears to indicate that, of those 34 "incidents," 6 involved fatalities. Of those 6 "incidents," only two appear to have involved airline tours (June 11, 1989 and April 22, 1992). The other four (September 16, 1992, January 25, 1993, April 18, 1994, and July 14, 1994) appear to have involved helicopters. *See* National Transportation Safety Board, Special Investigative Report (June 1, 1995). Even assuming that a report referring to two crashes with fatalities could be said to indicate a poor record for plane tours in Hawaii, the report does not demonstrate a poor air safety record during the fall of 1999, when the accident in issue here occurred. In fact, there is no evidence before this court on the airplane tour safety record in Hawaii from March 1995 until the date of the accident, September 25, 1999.

More importantly, Bobbie Rae Bailey's questions to the Big Island Adventures representative concerned Big Island Air's safety. It is undisputed that Big Island Air had a good safety record before September 25, 1999, and that it had not had a previous crash. It is also undisputed that, before selling the ticket vouchers to the Baileys, Big Island Adventures had previously sold ticket vouchers for Big Island Air flights, none of which crashed.

On the date of the crash, September 25, 1999, Defendant Shell Development Corporation–Greens was the general partner of Defendant Paniolo Greens Limited Partnership. Both of these companies did business as Big Island Adventures. *See* Affidavit of Gretchen I. Watson–Kabei (Aug. 28, 2003) ¶¶ 3–4 (indicating that, on September 25, 1999, Shell Development Corporation–Greens was the general partner of Paniolo Greens Limited Partnership); Ticket Vouchers (Sept. 24, 1999) (indicating that Shell Development Corporation–Greens was doing business as Big Island Adventures); DCCA Certificate of Limited Partnership for Paniolo Greens Limited Partnership (June 16, 1995) (indicating that Shell Development Corporation–Greens was Paniolo Greens Limited Partnership's general partner) (attached as PG00022 of Exhibit A to the Rule 30(b)(6) Deposition of Gretchen I Watson–

the statute of limitation (filed Sept. 24, 2003), Plaintiffs argue:

> Hawaiian tourist flights have been plagued with crashes at a rate far above any other tourist flight area in the United States for several decades. The poor safety record of Hawaiian tourist flights was so bad that the National Transportation Safety Board issued a Special Investigative report in 1995 documenting the dangerous nature of the business. The Federal Aviation Administration issued SFAR 71 in 1994 ... in an attempt to stop or at least slow down the rate of air tour crashes. *Unfortunately, SFAR 71 did not significantly reduce the rate of tour plane crashes in Hawaii. The local press had reported on over 100 tour plane crashes in the 10 years preceding the accident at issue in this litigation.*

*Id.* (emphasis added); *see also* Declaration of Niall Yamane (Sept. 23, 2003) ¶ 12 ("The local Hawaiian press reported on over 100 crashes of light tourist aircraft in the 10 years preceding the crash at issue in this litigation."). There is no evidence in the record indicating that there were over 100 airplane tour crashes in Hawaii in the decade before the Baileys' accident. Plaintiffs conceded at the hearing on these motions that the 100+ number was determined by counting every newspaper article describing an air tour crash in Hawaii. In other words, although referring to the number of crashes, Plaintiffs did not differentiate between a dozen articles all about the same crash and a dozen articles each about a different crash. Plaintiffs also did not differentiate between airplane tour crashes and other crashes involving air travel.

Kabei (Aug. 6, 2003));[10] Watson–Kabei Demo (Aug. 6, 2003) at 31 (indicating that, from the mid–1990s until March 2002, "Big Island Adventures was a dba for Paniolo Greens Limited Partnership"). Not only were the Shell Defendants registered under their formal names with the DCCA in Hawaii, there is no dispute that their "dba," Big Island Adventures, was also registered with the DCCA. These registration documents are available to the public.

On March 1, 2002, Paniolo Greens Limited Partnership and three other companies merged to become Shell Vacations Transitory Company, L.L.C. See DCCA Certificate of Merger (March 1, 2002) (attached as PG00015 of Exhibit A to Watson–Kabei Depo. (Aug. 6, 2003)). On the same day, Shell Vacations Transitory Company, L.L.C., became Defendant SVC–Hawaii, L.P., with Defendant Shell Holdings, Inc., being its general partner. See DCCA Certificate of Conversion (March 1, 2002) (attached as PG00031 of Exhibit A to Watson–Kabei Depo. (Aug. 6, 2003)). Shell Holdings, Inc., and SVC–Hawaii, L.P., are named as Defendants in this suit only as successors to Paniolo Greens Limited Partnership.

On August 21, 2001, Plaintiffs filed the present lawsuit, naming an activity provider and one hundred Does as defendants, but not naming the Shell Defendants until the First Amended Complaint was filed on December 5, 2002.

## IV. ANALYSIS.

### A. Plaintiffs' Claims are Barred by the Two–Year Statute of Limitation.

■ The First Amended Complaint seeks damages for "pain and suffering, emotional distress, property damage and other related claims." First Amended Complaint ¶ 28. It also seeks damages because "the plaintiffs and heirs have suffered the loss of their respective spouses, children and siblings and their respective care, companionship, society, comfort, counsel, love, services and support." Id. These types of damages all fall under Hawaii's wrongful death statute, Haw.Rev. Stat. § 663–3.[11]

---

10. In Plaintiffs' Objections to Defendant Paniolo Greens, et al.'s Evidence re. Defendants' Motions for Summary Judgment (Sept. 24, 2003), Plaintiffs object to various items of evidence submitted by the Shell Defendants. Except with respect to the Big Island Air ticket vouchers, the parties have stipulated to the authenticity of every document submitted to this court in connection with the Shell Defendants' motions. As to the voucher, Plaintiffs have not actually challenged authenticity. Instead, they have only pointed out that the preprinted address and the computer generated voucher information overlap. As this is a common phenomenon with typewriters and computers, the court does not consider this feature as raising a legitimate question as to authenticity, especially given Bobbie Rae Bailey's deposition testimony authenticating the voucher. With respect to Plaintiffs' other evidentiary objections, the court notes that it is relying only on the evidence cited in this order, all of which the court determines to be admissible unless otherwise stated in this order.

11. Under Haw.Rev.Stat. § 663–3(a), the personal representatives of those who died in the plane crash, as well as certain people with family relationships to the decedents, may bring suit for the wrongful deaths. Plaintiffs are not asserting that the general personal injury statute, Haw.Rev.Stat. § 657–7, applies here. In any event, claims that might otherwise be governed by section 657–7 are subsumed by section 663–3. Thus, in Ozaki v. Ass'n of Apmt. Owners of Discovery Bay, 87 Hawai'i 273, 954 P.2d 652 (App.), rev'd in part on other grounds, 87 Hawai'i 265, 954 P.2d 644 (1998), the Intermediate Court of Appeals of Hawaii ("ICA") addressed the issue of whether, in addition to instructions on Haw.Rev.Stat. § 663–3, a jury instruction on emotional distress should have been given to the jury in a wrongful death suit. The ICA held that such an instruction was not necessary because, although general damages for grief and mental suffering of survivors are not recoverable in most jurisdictions, "the emotional distress and mental suffering of survivors are considered by jurors under the di-

Based on the papers alone, there was no dispute that the two-year statute of limitations set forth in Haw.Rev.Stat. § 663–3 governs Plaintiffs' claims against the Shell Defendants.[12] *See Crawford v. Crawford,* 69 Haw. 410, 415, 745 P.2d 285, 288 (1987) (noting that the "relevant limitations period is determined from the nature of the claim or right based on the allegations contained in the pleadings") (quoting *Hun v. Center Props.,* 63 Haw. 273, 276, 626 P.2d 182, 185 (1981)). There is also no dispute that Plaintiffs' claims against the Shell Defendants were filed more than two years after the crash by way of a First Amended Complaint.

### 1. The First Amended Complaint Does Not Relate Back Under Rule 15(c).

Plaintiffs argue that, because the original Complaint was filed within two years of the Big Island Air crash, the claims against the Shell Defendants should relate back to the date of the original Complaint under Rule 15(c). As an initial matter, the parties dispute whether to apply the federal or the state Rule 15(c). The Shell Defendants argue that the federal rule is applicable, while Plaintiffs argue that the state rule applies.

Under Rule 15(c)(1) of the Federal Rules of Civil Procedure, "An amendment of a pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action." Fed.R.Civ.P. 15(c)(1). The Advisory Committee notes for Rule 15(c)(1) state:

> [Rule 15(c)(1) ] is intended to make it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law. Generally, the applicable limitations law will be state law. If federal jurisdiction is based on the citizenship of the parties, the primary reference is the law of the state in which the district court sits.... Whatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim.

Fed.R.Civ.P. 15(c)(1), 1991 advisory committee note.

There is a split among the circuits as to whether state procedural rules or federal procedural rules govern the relation back principles set forth in Rule 15(c)(1). *See Oros v. Hull & Assocs.,* 217 F.R.D. 401,

---

rection given them to compensate a survivor for the loss of a decedent's love and affection and requires no further elaboration in the instructions." *Id.* at 293, 954 P.2d at 672, *rev'd in part on other grounds,* 87 Hawai'i 265, 954 P.2d 644 (1998). Accordingly, to the extent Plaintiffs assert claims for their pain, suffering, and emotional distress, *Ozaki* indicates that such claims should be considered under Hawaii's wrongful death statute.

**12.** At the hearing, however, Plaintiffs argued for the first time that the court should apply the six-year statute of limitation set forth in Haw.Rev.Stat. § 657–20 ("Extension by fraudulent concealment"), which states:

> If any person who is liable to any of the actions mentioned in this part or section

663–3, *fraudulently conceals the existence of the cause of action or the identity of any person who is liable for the claim* from the knowledge of the person entitled to bring the action, the action may be commenced at any time within six years after the person who is entitled to bring the same discovers or should have discovered, the existence of the cause of action or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

Haw.Rev.Stat. § 657–20 (emphasis added). Because Plaintiffs have not shown that the Shell Defendants fraudulently concealed any cause of action or any identity, Plaintiffs have not shown that section 657–20 is applicable.

404–05 (N.D.Ohio 2003) (discussing circuit split). The Ninth Circuit has not yet decided the issue, and this court sees no need to do so, as, in this case, the federal and state rules are identical in all material respects.

Rule 15(c)(3) of the Hawaii Rules of Civil Procedure states:

> An amendment of a pleading relates back to the date of the original pleading when ... (3) the amendment changes the party or the naming of the party against whom a claim is asserted if [the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading] and the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Haw. R. Civ. P. 15(c)(3).

Rule 15(c)(3) of the Federal Rules of Civil Procedure is identical except for the inclusion of further language right before conditions (A) and (B) are stated. The federal rule requires that conditions (A) and (B) have been satisfied "within the period provided by Rule 4(m) for service of the summons and complaint." Under Fed. R.Civ.P. 4(m), the period for service is 120 days, unless extended. Clearly, when, as here, the amendment in issue comes more than a year after the original Complaint was filed and served, the additional language in the federal rule does not constitute a material difference from the state rule.

■ Plaintiffs have not raised a question of fact as to whether the Shell Defendants (A) received notice of the institution of this action such that they would not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning their identity, the action would have been brought against them. Accordingly, under either the federal or state rule, the First Amended Complaint does not relate back to the date the original Complaint was filed.

Gretchen I. Watson–Kabei is the assistant secretary and legal administrator of each Shell Defendant. *See* Affidavit of Gretchen I. Watson–Kabei (Aug. 28, 2003) ¶ 1. She says that the Shell Defendants first became aware of this lawsuit when Plaintiffs' counsel sent her a letter dated December 5, 2002. *Id.* ¶ 16.[13]

13. Plaintiffs object to Watson–Kabei's statements. Plaintiffs first argue that "[n]o evidence has been presented that Ms. Watson–Kabei is an officer/partner of the corporation/partnerships competent to testify as to the entities' knowledge." *See* Plaintiffs' Objections to Evidence (Sept. 24, 2003) at 5–6. However, Watson–Kabei states in her affidavit that she is the assistant secretary and legal administrator of each of the Shell Defendants. Watson–Kabei Aff. ¶ 1. She also says that her statement is based on personal knowledge. *Id.* ¶ 2.

Plaintiffs then speculate as to the extent of Watson–Kabei's knowledge, suggesting that someone else employed by the Shell Defendants may have known about this action. While it is indeed possible that another person employed by the Shell Defendants did know, this court cannot proceed on a mere possibility. It is possible, for example, that the woman with sandy-colored hair was employed by the Shell Defendants and knew from someone working at the neighboring Activity World desk that Activity World had been sued in this lawsuit. Any knowledge she had is something that discovery might have disclosed. However, more than two years after filing this lawsuit and with trial just a few weeks away, Plaintiffs offer no evidence creating a genuine issue of fact about any such knowledge or allowing an inference in that regard. Accordingly, Plaintiffs fail to meet their burden on this motion of showing a triable issue as to the Shell Defendants' notice of this action. *See T.W. Elec. Serv.,* 809

Citing *G.F. Co. v. Pan Ocean Shipping Co.*, 23 F.3d 1498 (9th cir.1994), Plaintiffs argue that the Shell Defendants had contractual relationships with unrelated companies that knew of this action and that this court should impute that knowledge to the Shell Defendants. The court is unpersuaded. In *Pan Ocean,* the Ninth Circuit recognized that the notice provision in Rule 15(c) is satisfied when "the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id.* at 1503 (quoting 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1499 at 146 (2d ed.1990)). *Pan Ocean* found such a close relationship between a company and its agent that notice to the agent could be imputed to the principal company. *Pan Ocean* is wholly consistent with authorities examining an identity of interest between companies:

> Although the relationship needed to satisfy the identity of interest test varies somewhat depending on the underlying facts, some general observations may be made. An identity of interest has been found between a parent and a wholly owned subsidiary, as well as between related corporations whose officers, directors, or shareholders are substantially identical and who may have similar names or conduct their business from the same offices. Identity of interest also has been found between past and present forms of the same enterprise.

6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1499 at 146 (2d ed.1990).

While notice to one Shell Defendant may well have provided notice to other Shell Defendants, Plaintiffs have no evidence that any Shell Defendant had notice. Instead, Plaintiffs attempt to demonstrate a "community of interest" between the Shell Defendants and various unrelated companies with which they had contracts. At the hearing, Plaintiffs represented to the court that the contract between Activity World and the Shell Defendants indicated that the Shell Defendants would indemnify Activity World if Activity World were sued. Activity World was indeed sued in this lawsuit, but there is no evidence that Activity World ever tendered its defense to the Shell Defendants or made any mention of the existence of this lawsuit to the Shell Defendants.

 Contractual relationships, by themselves, are insufficient to demonstrate a community of interest justifying an imputation of knowledge. The Shell Defendants were not on notice of this action merely because an unrelated company like Activity World had such knowledge.[14]

F.2d at 630 (the nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial and must produce at least some "'significant probative evidence tending to support the complaint'") (*quoting First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

Plaintiffs deposed Watson–Kabei in several sessions, including one on September 2, 2003, a few days after Watson–Kabei's affidavit was filed with this court. If Plaintiffs disputed Watson–Kabei's personal knowledge, Plaintiffs could have inquired as to the nature and extent of it. Plaintiffs' other objections to Watson–Kabei's statement (e.g., that her use of the term "instant action" is vague and ambiguous) are meritless.

14. Plaintiffs also argue that the Shell Defendants deceived them as to their identity. Once again, however, Plaintiffs submit no evidence supporting this argument. There is no dispute that Bobbie Rae Bailey signed the ticket vouchers. Those vouchers had the names of Big Island Adventures and Shell Development Corporation–Greens written on them. Moreover, Plaintiffs' MasterCard statement and time-share purchase paperwork had the name of Paniolo Greens Limited Partnership on them. The Shell Defendants were registered with the DCCA, so that their corporate structures were reviewable by everyone.

### 2. Plaintiffs Have Not Shown the Applicability of Rule 17(d) of the Hawaii Rules of Civil Procedure.

Plaintiffs' second argument in favor of relating the First Amended Complaint back to the filing of the original Complaint is that relation back is permitted by the Doe Defendants procedure under Rule 17(d) of the Hawaii Rules of Civil Procedure.

Rule 17(d) tolls the statute of limitation with respect to Doe Defendants "who cannot be identified prior to the running of the statute." *Wakuya v. Oahu Plumbing & Sheet Metal, Ltd.,* 65 Haw. 592, 596, 656 P.2d 84, 88 (1982). Accordingly, when "the only deficiency in the plaintiff's knowledge regarding a cause of action is the identity of other potentially responsible parties, HRCP Rule 17(d) provides a method by which the statute of limitations may be tolled relative to a claim against the as-yet unidentified defendants." [15] *Russell v. Attco, Inc.,* 82 Hawai'i 461, 466, 923 P.2d 403, 408 (1996).

Plaintiffs' Doe Defendant argument is unpersuasive. First, Plaintiffs did not utilize the Doe Defendant procedure set forth in the state court rule, choosing instead to amend their Complaint rather than comply with the rules for identifying Doe Defendants.

■ Second, even assuming that Plaintiffs had proceeded under Haw. Rule Civ. P. 17(d)(1) and that this court had found that rule applicable,[16] Plaintiffs have not demonstrated that they would have satisfied Rule 17(d)(1). Rule 17(d)(1) says that plaintiffs who are "unable to ascertain the identity of a defendant" may set forth in a pleading the person's interest in the action, and "so much of the identity as is known (and if unknown, a fictitious name shall be used"). In *Kleinjans v. Lombardi,* 52 Haw. 427, 435, 478 P.2d 320, 325 (1970), the Hawaii Supreme Court said, "Rule 17(d), by requiring a description of the defendant's interest in the action, ensures that a person receiving the complaint will have sufficient notice that he is the defendant intended. A mere 'John Doe' complaint without more specificity does not provide such notice...." Here, Plaintiffs' original Complaint had no specific Doe allegations relating to the acts that the Shell Defendants allegedly committed or omitted. *See* Complaint (Aug. 21, 2001). The claims against Activity Information Center (dba Activity World) in the original Complaint, *see* Complaint ¶¶ 31–34, and 61, are the same claims later asserted against the Shell Defendants in the First Amended Complaint. Plaintiffs therefore cannot claim to have been unable to provide a clearer description of the allegedly wrongful acts earlier. Under these circumstances, Plaintiffs cannot be said to have sufficiently identified the Shell Defendants for purposes of Rule 17(d)(1).

---

In rejecting the concealment argument, however, the court is not accepting the Shell Defendants' argument that they explained their corporate structure to Plaintiffs on May 23, 2003. While that appears to have happened, it is irrelevant. Plaintiffs had already identified the Shell Defendants by that date.

**15.** The Doe Defendant procedure set forth in Rule 17(d) is not designed to foreclose examination of whether a statute of limitation applies to bar a claim against a Doe Defendant. To the contrary, by requiring "strict observance" of the requisites of Rule 17(d), *see To-*

*bosa v. Owens,* 69 Haw. 305, 313, 741 P.2d 1280, 1286 (1987), Hawaii courts construe Rule 17(d) as making relation back far from automatic.

**16.** "Doe" pleading in diversity cases is allowed. *See Fat T, Inc. v. Aloha Tower Assoc. Piers 7, 8, and 9,* 172 F.R.D. 411 (D.Haw. 1996) (indicating that "Doe" pleading in diversity cases is allowed because federal courts look to state law on Doe Defendants in diversity cases). What is not clear, however, is what procedure is applied in federal court when a Doe is to be named.

Similarly, Plaintiffs have not shown on this record that they satisfy the requirements of Rule 17(d)(3), which states:

> Any party may, by motion for certification, make the name or identity of the party defendant known to the court within a reasonable time after the moving party knew or should have known the name or identity of the party defendant. The motion shall be supported by affidavit setting forth all facts substantiating the movant's claim that the naming or identification has been made in good faith and with due diligence.

*Accord* Haw. R. Civ. P. 17(d)(1) (requiring plaintiffs in their "pleading" to "set forth with specificity all actions already undertaken in a diligent and good-faith effort to ascertain the person's full name and identity"). Plaintiffs failed to submit a Rule 17(d)(1) motion at all, much less within a reasonable time of when Bobbie Rae Bailey knew or should have known from the ticket vouchers and charge card statement who the Shell Defendants were. Moreover, Plaintiffs' counsel's affidavit submitted in opposition to the present motion did not set forth "facts substantiating" Plaintiffs' claim that the identification of the Shell Defendants was made in good faith and with due diligence. Instead, Plaintiffs' counsel merely submitted conclusory statements that Plaintiffs did not know the identity of the Shell Defendants until October 2002 and that "Plaintiffs made a diligent and good faith effort to ascertain the identity of the Shell Defendants." *See* Declaration of Niall G. Yamane (Sept. 23, 2003) ¶¶ 3–4. Counsel's statement is contradicted by the record.

B. *The Shell Defendants are Entitled to Summary Judgment on the Merits.*

Even assuming that Plaintiffs could survive the Shell Defendants' motion for summary judgment on statute of limitations grounds, summary judgment would be granted in favor of the Shell Defendants on the merits.

At the hearing, Plaintiffs clarified their claims against the Shell Defendants. Plaintiffs unequivocally limited those claims to negligent misrepresentation claims and negligence claims based on *Sugimoto v. Exportadora De Sal*, 19 F.3d 1309 (9th Cir.1994), which held a company liable for damages caused in a plane crash based on negligence under California law. *Id.* at 1311–12. In addition to damages, Plaintiffs in this case request punitive damages. To the extent Plaintiffs' First Amended Complaint may have stated any other claims against the Shell Defendants, those claims are deemed to have been waived and dismissed by Plaintiffs.

1. *Negligent Misrepresentation Claims.*

■ To prove negligent misrepresentation under Hawaii law, a plaintiff must show (1) that the defendant failed to exercise reasonable care in communicating false information to the plaintiff; and (2) that the plaintiff justifiably relied on that information. *See Beals v. Kiewit Pac. Co.*, 114 F.3d 892, 895 (9th Cir.1997) (citing *Hawaii v. U.S. Steel Corp.*, 82 Hawai'i 32, 41, 919 P.2d 294, 303 (1996) (adopting the definition of negligent misrepresentation set forth in the Restatement (Second) of Torts (1977) § 552)).

■ In her deposition, Bonnie Rae Bailey stated that the Big Island Adventures representative told her that the Big Island Air flights were safe. Bailey claims that this was a negligent misrepresentation.[17]

---

**17.** At the hearing, Plaintiffs argued that their negligent misrepresentation claim was based on a statement by a Big Island Adventures representative indicating that air tour flights in Hawaii in general were safe. As discussed above, because Bobbie Rae Bailey's declaration contradicts her earlier deposition testimony on this point, it is disregarded. Accordingly, to the extent Plaintiffs claim a negligent

However, Bailey fails to demonstrate the falsity of this information. The undisputed evidence in the record is that, until the September 25, 1999, accident, Big Island Air had a safe flight history. Had the Big Island Adventures representative checked on Big Island Air's flight safety record, there would have been no evidence indicating a poor safety record. Moreover, because Big Island Adventures had sold ticket vouchers for earlier Big Island Air flights, and because those flights safely took off and landed, Big Island Adventures actually had some information upon which to base its statement that Big Island Air operated safely. Accordingly, Plaintiffs' negligent misrepresentation claims fail.[18]

### 2. Negligence Claims.

To prevail on their negligence claims, Plaintiffs must prove: (1) a duty, or obligation, recognized by the law, requiring the Shell Defendants to conform to a certain standard of conduct; (2) a failure on the Shell Defendants' part to conform to the standard required (a breach of the duty); (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage. See *Takayama v. Kaiser Found. Hosp.*, 82 Hawai'i 486, 498–99, 923 P.2d 903, 915–16 (1996).

The Shell Defendants argue that they are entitled to summary judgment on Plaintiffs' negligence claims because they owed no duty to Plaintiff. See *Hao v. Campbell Estate*, 76 Hawai'i 77, 80, 869 P.2d 216, 219 (1994) ("A negligence action lies only when the defendant owes a duty to the plaintiff.").

The Hawaii Supreme Court has stated that the existence of a duty is guided by several principles. First, the existence of a duty depends on whether a relation exists between the parties that the community determines imposes a legal obligation upon one for the benefit of the other. In other words, the existence of a duty turns on whether the interest of a plaintiff who has suffered invasion is entitled to legal protection at the expense of a defendant. Second, whether a duty exists is a question of fairness that involves weighing the nature of the risk, the magnitude of the burden of guarding against the risk, and the public interest in the proposed solution. Third, a court will not impose a new duty "without any logical, sound, and compelling reasons taking into consideration the social and human relationships of our society." *Hao*, 76 Hawai'i at 80, 869 P.2d at 219.

In an untimely supplemental brief filed on September 30, 2003, in violation of the court's Local Rules, Plaintiffs argue for the first time that the Shell Defendants breached a duty towards the Baileys in light of *Sugimoto v. Exportadora De Sal*, 19 F.3d 1309 (9th Cir.1994). *Sugimoto* is the only authority relied upon by Plaintiffs as demonstrating the existence of any duty. *Sugimoto* held a company liable for damages caused in a plane crash based on negligence under California law. *Id.* at 1311–12. *Sugimoto* discussed the "general rule ... that one is not liable for the tortious acts of an independent contractor." *Sugimoto*, 19 F.3d at 1311. *Sugimoto* noted, however, that the "general

misrepresentation claim, the court deems it to be based on the alleged representation that Big Island Air was safe, not that air tours in Hawaii in general were safe.

**18.** Even assuming that the Baileys were told that airplane tours in Hawaii in general were safe, there is no evidence in the record indicating the falsity of that alleged statement. At most, Plaintiffs submit evidence indicating that there were a pair of crashes of airplane tours involving fatalities in Hawaii. However, those crashes occurred years before the crash in this case. Plaintiffs have submitted no evidence indicating that airplane tours in Hawaii in and around 1999 were unsafe.

rule" is "riddled with exceptions." *Id.* at 1312. *Sugimoto* found such an exception applicable.

In *Sugimoto,* a company had chartered a private air taxi to fly people from its remote company town in Mexico back to Tijuana, Mexico. *Id.* at 1310–11. The company controlled the transportation to and from the company town, decided who visited and when and for how long, and determined when visitors would go to and from the town. Given these circumstances, the Ninth Circuit determined that, under California law, a negligence action could be maintained against the company for the tortious actions of a pilot who was not the company's employee. *Id.* at 1312. The Ninth Circuit reasoned:

> the enterprise, notwithstanding the employment of the independent contractor, remains the employer's when it "is the party primarily to be benefitted ... selects the contractor ... is free to insist upon one who is financially responsible, and to demand indemnity from him, [and] the insurance necessary to distribute the risk is properly a cost of the employer's business."

*Id.* (quoting *Van Arsdale v. Hollinger,* 68 Cal.2d 245, 66 Cal.Rptr. 20, 437 P.2d 508, 513 (1968), *overruled in part on other grounds, Privette v. Superior Ct.,* 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 80 n. 4, 854 P.2d 721, 730 n. 4 (1993)).

■ *Sugimoto* is distinguishable from the present case, as this case does not involve the same degree of entanglement between the company and the plane operator. Unlike the company in *Sugimoto,* the Shell Defendants did not dictate if and when the Baileys would fly in Big Island Air's plane, or where it would go. The Baileys paid for the flight costs, after getting a discount through the Shell Defendants, who used the discount to promote their time-share operations. The Baileys could have opted not to take the flight at all, or to take a different operator's tour. Unlike in *Sugimoto,* it cannot be said that the Shell Defendants were the parties "primarily to be benefitted" from the plane tour. Under the present circumstances, the court finds that Big Island Adventures did not owe the Baileys a duty with respect to the flight. This negligence action is not like that in *Sugimoto* and may not be maintained.

3. *The Waiver of Liability Clause is Enforceable.*

■ The Big Island Air ticket vouchers signed by Bobbie Rae Bailey stated: "Big Island Adventures shall not be construed as affiliates of Activity Vendor and are not liable or responsible in any way for Vendor or Vendor's actions." *See* Ticket Vouchers (Sept. 24, 1999). It is important to note that this disclaimer does not seek to avoid liability for Big Island Adventures' own actions. This is not a situation in which a party seeks a waiver of liability for its own actions. Instead, the disclaimer makes clear that Big Island Adventures is not responsible for Big Island Air's actions. Disclaimers such as this have been held to bar liability for the negligent conduct of third parties beyond the control of a travel agent or tour operator.

In *Sova v. Apple Vacations,* 984 F.Supp. 1136 (S.D.Ohio 1997), for example, the court found that a disclaimer barred claims against a travel agent for injuries the plaintiff received while on her vacation. *Id.* at 1140. The court reasoned that the disclaimer language was evidence of a lack of intention on the part of the travel agent to assume a contractual obligation to guarantee or warrant the safety of the person taking the vacation. *Id.* Plaintiffs cite no authority indicating that disclaimers such as this are invalid.

At most, Plaintiffs argue that the waiver is not enforceable because its states that

only Big Island Adventures disclaims liability, not that Shell Development Corporation–Greens and Paniolo Greens Limited Partnership also disclaim liability. As those entities were doing business as Big Island Adventures, the court finds this distinction meritless.

For the first time at the hearing, Plaintiffs also argued that the contract between Big Island Adventures and the Baileys for the flight had been rescinded. The evidence, however, does not support this argument. In paragraph 8 of Bailey's declaration, for example, she does not say that the Shell Defendants rescinded the contract. Instead, she merely states that, after the fatal crash, the Shell Defendants' representative told her that "she would credit the credit card account the amount of all activities purchased." This credit could not have rescinded the plane ticket contract. As the trip had already occurred, it could not be unwound. While Plaintiffs note that the time-share purchase was subject to rescission and was rescinded, the disclaimer was not part of the time-share purchase at all. The disclaimer appeared on the plane ticket voucher, not on any time-share contract.

### C. *Plaintiffs' Punitive Damages Claims Fail.*

Because partial summary judgment is granted in favor of the Shell Defendants on Plaintiffs' substantive claims against them, Plaintiffs' derivative claims of punitive damages asserted against the Shell Defendants also fail. *See Gold v. Harrison*, 88 Hawai'i 94, 103, 962 P.2d 353, 362 (1998) ("The Plaintiffs' claims of false light/invasion of privacy, punitive/exemplary damages, intentional infliction of emotional distress, and negligence were all derivative claims based on the Plaintiffs' claim that Harrison's Statement was defamatory, and, as Harrison's Statement was not defamatory, these claims must also fail.").

### V. *CONCLUSION.*

For the foregoing reasons, the court GRANTS both the Shell Defendants' Motion for Summary Judgement re: Statute of Limitations and their separate Motion for Summary Judgment. With this ruling, summary judgment is granted in favor of the Shell Defendants on all claims asserted against them in the First Amended Complaint. Given this court's denial of the United States' summary judgment motion in a companion order, the only claims remaining for further adjudication are against the United States and Big Island Air, Inc.

IT IS SO ORDERED.